# FITZGERALD AND MALLORY CONSTRUCTION COMPANY *v.* FITZGERALD.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF NEBRASKA.

No. 1141. Submitted October 28, 1890. — Decided November 17, 1890.

Where jurisdiction has been obtained by service of garnishee process in a proceeding *in rem*, the court has power to proceed notwithstanding defect in service on the person.

In such case, objection to jurisdiction over the person, to be availing, must not be raised in connection with denial of jurisdiction over the subject matter.

The defendant below having denied the power of the court to proceed at all, and upon decision against it having joined issue and gone to trial

on the merits, as jurisdiction existed over the subject matter, it was properly maintained over the person, even though the service on the person might have been set aside.

Where a foreign corporation is not doing business in a State, and no officer is there transacting business for the corporation and representing it in the State, it cannot be said that the corporation is within the State so that service can be made upon it; and evidence that the president of a foreign corporation so situated was induced by false representations to come within the jurisdiction for the purpose of obtaining service of process, and that process was there served, is immaterial, inasmuch as the corporation must be held to have known that it could not be brought into court by such a service.

Where an officer of a railroad construction company has full charge for it of the location and construction of a railroad, and is authorized to draw checks and drafts, and charged with the general management of the business of the company in the absence of contrary instructions by the board of directors, notes given by him for moneys used to pay off indebtedness of the company arising in the construction of the road, cannot be held to be in excess of his powers.

It was the duty of the directors to give contrary instructions if they wished to withdraw the general management from the president, and to disaffirm the action of their agents promptly if they objected to it.

If the notes were endorsed at the request of the party to whom the general management was confided, the indorsee, if compelled to protect his endorsement, cannot be treated as a volunteer, and if he was the superintendent of the work, and the money was raised and used to pay off sub-contractors and material men employed by him, then upon the refusal of the company to pay, he had the right to take up the notes and have them assigned to him.

Compensation for official services rendered in the absence of a specified compensation, fixed or agreed upon, may not be recoverable, but in this case it was properly left to the jury to determine whether the services rendered were of such a character and rendered under such circumstances that compensation could be claimed therefor.

Action on a motion for new trial is not a subject of exception.

THIS was an action brought by John Fitzgerald, a citizen of Nebraska, in the District Court of Lancaster County, in that State, against the Fitzgerald and Mallory Construction Company, a corporation created under the laws of Iowa. The petition was filed December 22, 1888, and summons issued; which was served on the 24th of December, by the delivery of a copy to S. H. Mallory, described in the return as "the president and managing agent" of the defendant company.

Under Title IV of the Code of Civil Procedure of Nebraska,

section 59 provides : "An action other than one of those mentioned in the first three sections of this title, against a non-resident of this State or a foreign corporation, may be brought in any county in which there may be property of, or debts owing to, said defendant, or where said defendant may be found; . . ." Comp. Stats. Neb. (1889) p. 860. Under Title VIII, section 198, it is provided that : "The plaintiff in a civil action for the recovery of money, may, at or after the commencement thereof, have an attachment against the property of the defendant and upon the grounds herein stated: *First.* When the defendant, or one of several defendants, is a foreign corporation or a non-resident of this State; . . ." Under section 199: "An order of attachment shall be made by the clerk of the court in which the action is brought, in any case mentioned in the preceding section, when there is filed in his office an affidavit of the plaintiff, his agent or attorney, showing : *First.* The nature of the plaintiff's claim. *Second.* That it is just. *Third.* The amount which the affiant believes the plaintiff ought to recover. *Fourth.* The existence of some one of the grounds for attachment enumerated in the preceding section." Then follow various sections relating to proceedings in attachment and garnishment. Comp. Stats. Neb. p. 877.

In this case, affidavit for attachment against defendant as a foreign corporation was made, order of attachment and garnishee summons issued and the latter served upon the Missouri and Pacific Railroad Company, as owing debts to the defendant. The garnishee subsequently answered that it was impossible to make a definite answer as to whether, on an accounting between it and the defendant, there would be due to the defendant any sum or sums of money whatsoever; and that litigation was pending in respect to a contract between it and the defendant for the purchase of certain securities, which it claimed might result, upon a proper accounting, in no indebtedness on its part to the defendant, and until the termination of which it could not answer more specifically.

The petition counted upon fourteen causes of action: (1) Upon a note for $5002.80, dated July 31, 1888, payable ninety

days after date, to the order of the First National Bank of Lincoln, Nebraska, with interest at the rate of ten per cent per annum until paid, signed by S. H. Mallory, its president, and endorsed by plaintiff and Mallory. Plaintiff alleged that the note not being paid at maturity, he, who had endorsed it "without any consideration," paid it with interest and it was thereupon transferred to him by the cashier of the bank; and that the sum of $5128.25, paid by him with interest from the first day of November, 1888, was now due. (2) Upon a note for $15,290.24, dated July 25, 1888, payable sixty days after date to the order of J. J. P. Odell, cashier, with interest at seven per cent, signed by the defendant corporation by Mallory, its president, endorsed by plaintiff and Mallory and taken up by Fitzgerald, who had endorsed it without consideration and paid it with interest, the full sum paid being $15,468.62, which was due with interest from September 25, 1888: (3) For services from May 1, 1885, to May 1, 1886, in doing work with the view of organizing the defendant, which had received all the benefits of the same and agreed to pay therefor, and which services were alleged to be worth $5000. Also for services from the first day of May, 1886, to the 4th of November, 1886, as superintendent, treasurer or manager of defendant, placing their value at the sum of $6000: (4) For services as general manager from November 1, 1886, to November 1, 1887, at the agreed salary of $5000: (5) For same from November 1, 1887, to May 1, 1888, $2500: (6) For scrapers and plows sold and delivered to defendant at its request, $1515: (7) For track-laying tram sold and delivered to defendant at its request, $1500: (8) For money paid for personal expenses incurred at defendant's request during the year 1886, $396.65: (9) For same for year 1887, $227.50: (10) For balance of $1928 due on a draft for $5500, signed by defendant by C. H. Lamb, auditor, to order of S. H. Mallory, and accepted by him as president, plaintiff having taken up said draft, and $1928 being due with interest from July 30, 1888: (11) Upon note for $5000, signed by defendant by C. H. Lamb, auditor, to order of First National Bank of Chariton and endorsed to plaintiff for value, and due with interest from November 22, 1888: (12) Upon

note for $856.64, dated January 16, 1888, signed by defendant by Mallory, its president, to order of M. S. Cartter & Co., and endorsed to plaintiff and due with interest from date: (13) Upon note for $917.91, dated November 23, 1888, signed by defendant by Lamb, auditor, to order of First National Bank of Chariton and endorsed to plaintiff, with interest from date: (14) For money paid since January 1, 1888, upon request of defendant for legal services and advice, and otherwise, for defendant's benefit, $5000.

Plaintiff prayed judgment for the sum of $51,271.85, with interest on the various sums and from the various dates as demanded.

On the 4th of January, 1889, the defendant filed its demurrer to the petition, upon the grounds of insufficiency, misjoinder, and defect of parties, and on the 16th of January its petition to remove the cause into the Circuit Court of the United States for the District of Nebraska, the petition being verified by the affidavit of "the duly authorized attorney of the defendant." The cause having been removed, the defendant applied for leave to answer by a day named, and afterwards obtained leave to amend. The amended answer was filed June 19, and denied the authority of Mallory to make the notes described in the first and second counts; the contract and services set up in the third count (also pleading payment); admitted that plaintiff was employed by defendant under a salary of $5000 for part of the time referred to in the fourth count; admitted liability for salary named in the fifth count, but alleged that plaintiff failed to render the services to defendant's damage; denied that plaintiff sold and delivered the property declared on in the sixth and seventh counts; that Lamb, auditor, had authority to make the draft set up in the tenth count, alleging that its proceeds were divided between plaintiff and Mallory; that Lamb, auditor, had authority to make the note set up in the eleventh count, alleging that defendant received no benefit therefrom, and that Mallory caused the note to be transferred to plaintiff solely for the purpose of bringing suit thereon; denied that Mallory had any authority to make any of the instruments in

writing sued on, and alleged that plaintiff had full knowledge of such want of authority; and denied any liability on the fourteenth count. The two closing paragraphs are each numbered "11," the last asserting "that the District Court of Lancaster County, State of Nebraska, never had or acquired any jurisdiction of this defendant, and this court has no jurisdiction to hear, try and determine the matters and things in controversy herein." It appears from the record that on the 22d of June the parties were given leave to amend the pleadings to conform to the facts, and it is stated by counsel that this paragraph was then written in on the amended answer.

On the 11th of May the cause was set down for trial by agreement of parties, and came on for trial the 20th of June, 1889, upon the issues joined, and a jury having been empanelled, the trial continued during the 20th, 21st, 22d, and 24th days of June, when it was given to the jury, the court instructing them, among other things, to disregard the first branch of the third count and the fourteenth count. The jury returned a verdict, on the 25th of June, finding the issues for the plaintiff, and assessing the amount of his recovery "at $47,937.97 debt, and $3474.65, interest thereon at 7 % from 25th day of June, 1889, being the sum total of $51,412.62."

Motions in arrest and for new trial were made and overruled, and judgment rendered on the verdict. Pending the trial, on the 22d day of June, a plea to the jurisdiction of the court was filed, setting up that service of the summons in the action was obtained by means of a trick and fraudulent device, whereby the president of the defendant, Mallory, was induced to go from Iowa to the State of Nebraska, where, upon his arrival, he was served with process, which fraud was unknown to defendant when it filed its demurrer to the plaintiff's petition, its petition for removal, and its answer and amended answer, and that Mallory, after the service, acting in concert with the plaintiff, concealed the facts from the defendant; and praying that, therefore, proceedings be stayed and the action dismissed. This plea was overruled by the court, and the plaintiff then filed a motion for a non-suit, upon the ground that the defendant was improperly sued in Lancaster

County, Nebraska, and the District Court of that county had no authority to take jurisdiction of the action or of the defendant, and that neither that court nor the United States court had jurisdiction of the defendant; which motion was overruled. The plea to the jurisdiction and evidence bearing thereon, and the motion to dismiss, with an affidavit which accompanied it, were duly made part of the record by bill of exceptions. On the 24th of June the defendant filed a motion to dismiss, because the process of the court had been fraudulently used by plaintiff to obtain service on the defendant, defendant being in ignorance thereof until during the trial, and that at the time suit was brought and summons served on Mallory, defendant had no general managing agent, and no managing agent in Nebraska, and no office or place of business there, and that Mallory was not in Nebraska on any business for the defendant; which motion was overruled and the defendant excepted.

The trial was had upon the merits, evidence being adduced on both sides, and exceptions were taken by defendant to various parts of the charge of the court and to the refusal to give certain instructions requested on its behalf. Judgment having been rendered, defendant brought the cause to this court on writ of error.

*Mr. John F. Dillon* and *Mr. David D. Duncan* for plaintiff in error.

*Mr. T. M. Marquett* for defendant in error.

MR. CHIEF JUSTICE FULLER delivered the opinion of the court.

It is contended that the Circuit Court should have refused to proceed with the action if it appeared to its satisfaction that the service upon the defendant was obtained by means of a fraudulent device and trick; and that this question was presented by the plea to the jurisdiction, the motion for a nonsuit, the motion to dismiss, and a request, which was refused,

for an instruction to the jury to render a verdict for the defendant, if they found from the evidence that the service was fraudulently procured and that the defendant had ignorantly acquiesced therein.

If a person is induced by false representations to come within the jurisdiction of a court for the purpose of obtaining service of process upon him, and process is there served, it is such an abuse that the court will, on motion, set the process aside; but no such motion was made here, and the question as raised went deeper than objection to service merely, and attacked the power of the court to proceed at all.

Under the laws of Nebraska, actions against non-residents and foreign corporations might be brought in any county in which there might be property of, or debts owing to, the defendant; and the plaintiff in a civil action for the recovery of money might, at or after the commencement thereof, have an attachment against the property of a defendant, when such defendant was a foreign corporation or a non-resident of the State. Comp. Stats. pp. 860, 877. The plaintiff had proceeded under these provisions, an order of attachment had been made and garnishee process duly served. There was no pretence that property had been brought into the State by means of fraudulent inducement, or that the claim against the garnishee was fictitious. If the case had gone to judgment under the attachment proceedings, it would only have subjected the property of the defendant lying within the territorial jurisdiction of the court to the payment of the plaintiff's demand. The case would have been in its essential nature a proceeding *in rem.* Had defendant moved to set the service aside and the motion been sustained, the court would not have dismissed the case for want of jurisdiction. The appearance of the defendant, however, converted into a personal suit that which was before a proceeding *in rem.* By its demurrer, petition for removal, answer and amended answer, and participation in the trial, the defendant waived all question of the service of process. And the record shows a resolution adopted by the defendant authorizing the attorney who appeared for it "to appear and represent this company as its sole attorney

in all suits and proceedings at law or in equity now pending, or which may hereafter be brought."

By the amendment to its answer, its plea and motions, the defendant insisted that the court had no jurisdiction to proceed, and thereby declined to stand upon the objection to the service, and submitted itself to the decision of the court in respect to jurisdiction over the subject matter, which jurisdiction, it is entirely clear, the court possessed. These proceedings were taken by defendant after discovering the alleged ground of objection to the service and there was no action on its part confined solely to the purpose of questioning the jurisdiction over the person. That such jurisdiction resulted under the circumstances admits of no doubt, and the rule to that effect seems well settled in Nebraska, Kansas and Ohio, which all have similar codes. *Elliott* v. *Lawhead*, 43 Ohio St. 171; *Porter* v. *Chicago & Northwestern Railroad*, 1 Nebraska, 14; *Aultman* v. *Steinan*, 8 Nebraska, 112; *Meixell* v. *Kirkpatrick*, 29 Kansas, 679.

Nor are we impressed with the tenability of plaintiff's position in relation to the service in any view. Where a foreign corporation is not doing business in a State, and the president or any officer is not there transacting business for the corporation and representing it in the State, it cannot be said that the corporation is within the State, so that service can be made upon it. *St. Clair* v. *Cox*, 106 U. S. 350; *New Eng. Mut. Life Ins. Co.* v. *Woodworth*, 111 U. S. 138; *Ex parte Schollenberger*, 96 U. S. 369. So that whether the president of this company was inveigled into Lancaster County or not, the service upon him amounted to no more than an informal notice only and did not bring the company into court, and this the company was bound to know and must be held to have known. Without regard to the evidence relied on to show that there was concealment of the circumstances in relation to the service, knowledge of these circumstances was wholly immaterial, in view of the fact that the service was unavailing to bring the defendant into court unless it chose to come there. We are of opinion that no error was committed by the court in its rulings upon this subject.

Errors are also assigned in respect to certain instructions given or refused by the court, bearing on the question of recovery upon the notes and drafts described in the petition.

The fifth and eighth of the articles of association of the defendant, and sections three and six of its by-laws, provided as follows:

"Article fifth. The directors . . . shall manage the business of the corporation; they shall have power to sell, lease, or mortgage all their property and lands acquired by said corporation; to issue the bonds of the same, signed by the proper officers thereof, for the purpose of raising money to carry on the business of the corporation, and to secure the same by mortgage upon real estate, buildings, machinery and other property of the company. They shall also appoint a president and vice-president from their own number, a secretary and treasurer, who may or may not be directors, and such other officers as may be deemed necessary. . . ."

"Article eighth. All certificates of stock, contracts and bonds shall be signed by the president and secretary."

"Section 3. The president shall perform the duties that usually pertain to the duties of his office and be the chief executive officer of the company; and, in the absence of contrary instructions by the board of directors, shall be charged with the general management of the business of the company."

"Section 6. The treasurer shall give bonds. . . . He shall pay out money only upon the order of the president and such other officers as may be ordered by the board of directors. He shall make a statement of the financial condition of the company, etc. He shall keep in proper books a regular account of the stock of the company, etc."

Argument is made that there could be no recovery on the notes and drafts in question, because it is said they were made by the president or auditor of the company, without the knowledge or consent of the board of directors; and further, that the notes in the first two causes of action named were paid by the plaintiff when he was under no obligation to pay them and in that respect was a mere volunteer.

The evidence tended to show that Mallory was authorized to build the line of the Denver, Memphis and Atlantic Railroad Company across Kansas, and the State Line and Pueblo Railroad Company, from the State Line to Pueblo, in Colorado, being a distance in the aggregate of about six hundred miles of railroad, and which cost some seven millions of dollars; that he had full charge of the location and construction of the road; that he was authorized to draw checks and drafts, and all these notes and drafts were made, accepted, or authorized by him; that the directors not only did not give contrary instructions in the first instance, but knew of the giving of the notes and drafts, and did not disaffirm the action of the president; and that the proceeds were used for the payment of construction liabilities of the company in every instance, either directly or in taking up paper, the proceeds of which had been so used.

The court instructed the jury that if they found from the evidence that the president was given entire management in building the railroads, and in the incurring of liabilities and paying off debts incurred therein, he might appoint other agents, such as a cashier and auditor, for the purpose of making the calculations on pay-rolls and on contracts for building the roads, and might empower any one of such agents who made such calculations upon the pay-rolls of the amount due to those who did the work by contract or otherwise, to draw any checks or bills or sight drafts necessary to pay the same, and "if it became necessary for the benefit of said company to execute promissory notes or to draw sight drafts, the said president would have ample authority to do the same, and might likewise empower the cashier or the party whose duty it was to ascertain the amounts due to contractors, material men, and persons working upon the construction or building of said railroad, by the construction company, to draw drafts or checks, or even make promissory notes, and that the same, if done for the company or for its use and benefit, would be binding upon the said company, unless the president received from the directors certain instructions which limited his authority in the premises." The court also instructed the

jury : " As to the promissory notes which were endorsed by the plaintiff and upon which he was held as endorser, if the jury find from the evidence that said notes were executed in good faith by the president of the construction company, and that the proceeds or the proceeds of the notes and drafts of which the notes in question were renewals were received by and used for the benefit of the construction company, and you further find that the plaintiff is now the holder and owner of said notes, you will find for the plaintiff in the full sum of said notes with interest." And further: "And although there may be a provision in the by-laws of said construction company requiring certain formalities in the execution of a promissory note or draft, yet that does not necessarily make such formalities essential to the ratification of the contract; and if you find from the evidence that said notes were given for the purpose of paying off debts that were due by said construction company, and that the directors of said construction company had full knowledge of the same and assented to the transaction, to the signing and execution of the notes, you will find that said acts of the president have been fully confirmed, and you will find for the plaintiff the full amount of said notes with interest, provided you find the plaintiff was the owner of the same and is now the lawful holder of them."

These instructions were justified under the evidence. If the moneys were used to pay off indebtedness of the company, arising in the construction of the road, and for work done under proper authority, the transactions were in pursuance of the authorized purposes of the corporation, and occurred in its legitimate business. The execution of the paper could not be held to be in excess of the powers given, and it was clearly the duty of the directors to give contrary instructions, if they wished to withdraw the general management from the president; and to disaffirm the action of their agents promptly and at once, if they objected to it. *Indianapolis Rolling Mill* v. *St. Louis &c. Railroad*, 120 U. S. 256 ; *Creswell* v. *Lanahan*, 101 U. S. 347. The company was liable upon the original indebtedness, and its change of form in order to relieve the pressure of the creditors was by the direction, with the partici-

pation, and at the request of the president. We perceive no want of power and no omission of essential formalities in what was done. And the mere fact that Fitzgerald was a stockholder in and a promoter and director of the company, and, with the president, the manager of the work in the prosecution of which the indebtedness arose, would not change the binding character of the obligation. *Twin Lick Oil Co. v. Marbury,* 91 U. S. 587; *Gardner* v. *Butler,* 30 N. J. Eq. 702, 721; *Harts* v. *Brown,* 77 Illinois, 226.

Again, there was evidence to the effect that Fitzgerald endorsed the notes at the request of the president. Inasmuch as the defendant was answerable for the indebtedness which the money received upon the notes went to pay, if in order to obtain that money Fitzgerald was called on to endorse the notes, and then compelled to protect his endorsement, he could not be treated as a volunteer. There would be no element in such a transaction of the voluntary payment by one of another's debt. So, if Fitzgerald was the manager of the work under the president, and the money was used to pay off the subcontractors, material men and hands, then, upon the refusal of the company to repay, Fitzgerald had the right to take up the notes and have them assigned to him; and whether he was the owner and holder of the notes was left to the determination of the jury.

By the first section of the by-laws, the officers of the company were declared to be " a president, vice-president, secretary and treasurer, and such other officers as may be deemed necessary to carry out the object of the articles of this incorporation."

Under the second branch of the third cause of action, plaintiff claimed to recover for services as superintendent and manager of the company, and also for expense and trouble when acting as treasurer from May 1 to November 4, 1886. On the latter date the board of directors fixed a definite sum as salary for a general manager, an office not otherwise or before created, so far as the record discloses.

The court instructed the jury that "if Fitzgerald, the plaintiff, acted as superintendent, treasurer or general manager of

said company, and transacted the usual business that devolves upon such officer of such a concern as that, with the knowledge and consent of the defendant," (during the time before compensation was fixed,) there would be an implied agreement on the part of the defendant to pay what the services were reasonably worth; and afterwards repeated this instruction more in detail, confining it to services as manager.

If strict verbal accuracy was not observed in giving this direction, in view of the general rule as to compensation for official services rendered in the absence of a specified compensation fixed or agreed upon, yet we do not think, taking all parts of the charge upon that subject together, that any substantial error was committed. The evidence tended to establish that Fitzgerald acted as treasurer for some months in 1886, and that while so acting he went to expense and trouble in the procuring of money for the company, and in the discharge of duties outside of those assigned to the treasurer as such, as defined in section 6 of the by-laws already quoted; and that as manager or superintendent he procured right of way, superintended the doing of the work, the hiring of the men, the sub-letting of the contracts, etc., which were matters not at all pertaining to his office as director. The character of all these services placed them outside of official duties proper.

The general rule is well stated by Mr. Justice Morton, (since Chief Justice of Massachusetts,) in *Pew* v. *First Nat. Bank,* 130 Mass. 391, 395: "A bank or other corporation may be bound by an implied contract in the same manner as an individual may. But, in any case, the mere fact that valuable services are rendered for the benefit of a party does not make him liable upon an implied promise to pay for them. It often happens that persons render services for others which all parties understand to be gratuitous. Thus, directors of banks and of many other corporations usually receive no compensation. In such cases, however valuable the services may be, the law does not raise an implied contract to pay by the party who receives the benefit of them. To render such party liable as a debtor under an implied promise, it must be shown, not

only that the services were valuable, but also that they were rendered under such circumstances as to raise the fair presumption that the parties intended and understood that they were to be paid for; or, at least, that the circumstances were such that a reasonable man, in the same situation with the person who receives and is benefited by them, would and ought to understand that compensation was to be paid for them." Tested by this rule, we think that the court fairly left it to the jury to determine whether Fitzgerald rendered services of such a character and under such circumstances that he was entitled to claim compensation therefor. It could not properly have been held as matter of law that he was not so entitled, and the reference to the treasurer, as made in one clause of the charge, even though inaccurate, was not of sufficient moment to require a reversal of the judgment.

The sums claimed in the several causes of action aggregated $56,438.57, and the prayer for judgment was for the sum of $51,271.85, with interest on the various sums from the dates when the liabilities were respectively alleged to have accrued, on some of the items at seven and on others at ten per cent. The court instructed the jury to disregard the first branch of the third cause of action, and the fourteenth cause of action, under each of which $5000 was claimed. The verdict of the jury assessed the amount of the plaintiff's recovery in two items of "$47,937.97 debt, and $3474.65 interest thereon at 7% from 25th day of June, 1889, being the sum total of ($51,412.62) fifty-one thousand four hundred and twelve and $\frac{62}{100}$ dollars." Counsel now insists that as, if from $47,937.97 the sum of $46,438.57, the aggregate of the amounts claimed in the several counts, less the amounts excluded, is taken, it will appear that the verdict exceeded the latter aggregate by $1499.40, and exceeded the principal sum prayed for, after making the same deduction, by $6666.12, the jury must have disregarded the instructions of the court, and the judgment should be reversed for that reason. The motion for new trial was filed on the 28th of June, and, after being held under advisement, was overruled on the 5th day of December, and the court then entered judgment "against the defendant for the sum of

($51,412.62) fifty-one thousand four hundred and twelve and $\frac{62}{100}$ dollars, debt, with interest from June 25, 1889," the date of the return of the verdict, and costs of suit. It thus appears that the court held that the sum total, as found by the jury, was correct, and ignored the division of that amount into two sums. If the $3474.65 was for interest, it was as much less than the interest properly calculated amounted to as the $47,937.97 was more than the aggregate of the several sums claimed, exclusive of the first branch of the third cause of action, and of the fourteenth. There was also evidence in support of some items of expenditure which apparently could have been recovered under the fourteenth cause of action, and it may be that these were allowed by the jury, and the court was of opinion that this was properly done, notwithstanding its instruction. The bill of exceptions shows that on the third day of the trial "both parties were given leave to amend their pleadings to conform to the facts," and some confusion has evidently arisen from the circumstance that what was done under that leave is not clearly shown by the record. The motion for a new trial was addressed to the discretion of the Circuit Court, and action on such a motion is not a subject of exception.

Upon the whole, we find no sufficient ground for disturbing the judgment, and it is accordingly

*Affirmed.*