NEAL v. NEW ORLEANS, ETC., ASSOCIATION.

(*Jackson.* March 8, 1898.)

1. FOREIGN CORPORATIONS. *Contract of, made in another State, when.*

A contract for the loan of money by a building and loan association, having no office or agency in this State, made direct from its home office in Louisiana, to be secured by a mortgage on land in Tennessee, the loan and each installment note thereon being payable in the former State, is a Louisiana contract, and the Tennessee statutes requiring foreign corporations to register their charters as a condition of doing business or holding property in the State does not apply. (*Post, pp. 608–615.*)

Acts construed: Acts 1891, Ch. 122; Acts 1895, Ch. 119.

Cases cited and approved: Hubble v. Land Co., 95 Tenn., 589; Pioneer, etc., Co. v. Cannon, 96 Tenn., 603; 83 Fed. Rep., 410; 24 L. R. A., 295, note.

2. BUILDING AND LOAN ASSOCIATIONS. *Method of settlement with borrower.*

A borrower from a building and loan association who, at the instance of liquidators of such association, makes a formal application for membership in a new association and for a loan of the original amount, executing a formal deed of trust as security, receiving from the new association a check for the amount of the loan, which is by him indorsed to the liquidators, and by them transferred back to the new association, is entitled to credit for payments made to the old association on a settlement with the new association. (*Post, pp. 615–618.*)

---

FROM SHELBY.

---

Appeal from Chancery Court of Shelby County. STERLING PIERSON, Ch.

Neal *v.* New Orleans. etc., Association.

CARROLL, CHALMERS & McKELLAR for Neal.

ROBT. M. BEATTIE for Association.

McALISTER, J.    The object of this bill is to can-
cel a mortgage executed to a building and loan asso-
ciation upon the ground that the debt secured has
been paid.

It appears from the proof in the record that on
September 12, 1891, complainant borrowed of the
New Orleans Loan, Building & Savings Association,
a corporation having its domicile in the State of
Louisiana, the sum of $500, and, to secure its pay-
ment, executed a mortgage on a certain lot in the
city of Memphis.    The consideration recited in the
mortgage was $776.50, but complainant only received
$500, the additional $276.50 representing the pre-
mium, fees, and interest, to accrue during the pen-
dency of the loan, which was to extend over a period
of six or eight years.    Complainant executed seventy-
eight notes for ten dollars and fifty cents each, pay-
able monthly, evidencing the consideration expressed
in the deed.    Complainant paid to the association
twenty-two of these notes as they matured, amount-
ing to $231.    He further paid $30.50 as dues, and
at the time the trouble arose with the association
was in no default on any account.

In 1893 complainant was notified by said associ-
ation that it had gone into liquidation, and suggest-
ing that, with complainant's consent, it would trans-
fer its claim against him, as well as the security

therefor, to the defendant, New South Building &
Loan Association. This proposition was accepted by
complainant, and thereupon the old mortgage was
canceled, and a new deed of crust executed to the
new company and a new note given. The new mort-
gage to the defendant company recited a considera-
tion of $500, to be paid in equal monthly install-
ments of $8.50 until the whole amount should be
paid. Complainant alleges that he received no ad-
ditional consideration for this second mortgage, and
that the only consideration he ever received for both
of said mortgages was the sum of $500 received
from said old company. Complainant alleges that
in pursuance of the new agreement he paid said
monthly installments of $8.50 each as they matured
until said payments amounted, exclusive of what he
had paid to the old company, to the sum of $289.
Complainant insists that he has thus returned to the
association more than he borrowed, with interest.

Complainant further alleges that defendant associ-
ation, at the time of entering into this contract, had
not filed its charter, as required by the Act of 1891,
and hence the contract was illegal and void. It is
then shown that defendant company had complied with
the Act of the Legislature passed May 10, 1895,
validating the contracts of foreign corporations by
filing its charter, as required by the original Act.
The Act approved May 10, 1895, validated all con-
tracts entered into by foreign corporations, provided
such corporation had filed a copy of its charter

16 P—39

with the Secretary of State, and recording abstracts thereof in each county in which it carried on business, or shall, within four months after the passage of that Act, so file such charter and abstracts of same. Another provision was embraced in said Act, namely: "That no mortgage or deed of trust executed to a foreign corporation, or to a trustee, to secure indebtedness to a foreign corporation upon real estate in this State, where such foreign corporation had not complied with the laws of this State at the time such mortgage or deed of trust was executed, shall be foreclosed, either under a power of sale or judicial decree, until two years after the passage of this Act," etc. It was further provided, in Section 2 of said Act, viz.: "That in settlements made under this Act not more than six per cent. on the amount actually received by the parties shall be collected, but notes signed in this State, and payable in this State, but wholly secured by deeds of trust or mortgages on lands in other States, shall be enforceable for the amount of interest permitted in the State where the land is located."

The defendant, as already stated, filed its charter under the provisions of this Act, and likewise caused the charter of the New Orleans Loan, Building & Savings Association to be recorded in this State.

Complainant files this bill for a settlement with defendant company under the second section of the Act of 1895, and claims that he has already paid back to the company more than the amount bor-

rowed, with six per cent. interest. He therefore prays for a cancellation of the deed of trust and for a decree for the excess paid by him.

The defendant association denies the allegations of the bill in respect of the relations established between the New Orleans Loan, Building & Savings Association and the New South Building & Loan Association in the disposition of loans and securities made by members of the former association. Defendant insists that it agreed with the new Orleans Loan, Building & Savings Association, when the latter went into liquidation, that it would make loans to all borrowers who were willing to accept such loans and pay off their mortgages held by the former association, provided a certain number of subscribers to their stock was obtained; that such subscribers were furnished, and defendant company thereupon made loans to such borrowers as made application, upon sufficient security. It is insisted that each loan was an original transaction, entirely independent of the loan made by the former company, and that defendant company received no benefit whatever from the money theretofore paid to the said New Orleans Loan, Building & Savings Association. Defendant company claims that it loaned to complainant, Neal, on the building and loan plan, the sum of $500, to enable him to pay off his mortgage to the former company, which had become insolvent, and accepted a new mortgage as security for said loan. It admits that it retained the old

notes executed by complainant to the old company, but that this was done inadvertently, and it offers to surrender them. Defendant further claims that its contract was not in contravention of the provisions of the Act of 1891, and denies that it is required to settle under the terms of the Act of 1895.

A large volume of proof was taken, and, on the final hearing, the Chancellor was of opinion that the two mortgages were separate and distinct transactions, and that the payments made by complainant, in the mortgage executed to the old company, could not be credited on the second mortgage. The Chancellor denied a settlement under the building and loan plan, but decreed a settlement on the basis of the Act of 1895, charging complainant with the $500 check and interest thereon at six per cent., and crediting him with amounts and interest paid on second mortgage. Complainant and defendant both appealed.

Complainant assigned as error—

(1) That the Chancellor found that the two transactions with the two associations were separate and independent of each other;

(2) That the Chancellor erred in not finding that the note and mortgage executed by complainant to defendant was without consideration and void;

(3) That the Chancellor erred in not finding that the check given by defendant company to complainant for $500 was a mere matter of form, and that no money actually passed;

(4) The Chancellor erred in not finding in favor

of complainant and adjudging a cancellation of said mortgage, and awarding a judgment for such amount as complainant had paid over and above the said $500 actually received by him (from the old company), and interest at six per cent.;

(5) That the Chancellor erred in adjudging one-half the costs against complainant.

The defendant assigned as error the action of the Chancellor in decreeing that Sec. 2, Ch. 119, Acts 1895, applies under the facts in this case, and that settlement should be made thereunder instead of upon the building and loan plan, as set out in the mortgage and note executed to defendant company. The Chancellor, as already stated, decreed a settlement as provided by Sec. 2, Ch. 119, Acts 1895, but did not include in this settlement the amounts paid by complainant to the New Orleans Loan, Building & Savings Association. But defendant's assignment is that it was not doing business in this State; that it had no local board here, and that the loan to complainant was made direct from its home office in New Orleans, La., through its attorney, and that it did not have an office or agency in this State. It is insisted, further, that said indebtedness is payable in New Orleans, State of Louisiana, and that the law of Louisiana—the place of performance—governs, and not the law of Tennessee. It is well settled that the law of the place where performance is to occur governs in respect of the validity and performance of contracts made in one State, but to be

performed in another. *Hubble* v. *Morristown Land Co.*, 95 Tenn., 589.

In *Bennett* v. *Eastern Building & Loan Association of Syracuse, New York*, 35 Atl. Rep., 684, it appeared that a citizen of Pennsylvania, on application made in that State to an agent of a New York building and loan association, became a member thereof and obtained a loan from it, giving notes and bond therefor, secured by mortgage on Pennsylvania lands. All the instruments describing the association as of Syracuse, New York, and declaring the notes payable at its office there, the Court held that it was a New York contract. The Court said, viz.: "The Pennsylvanian had a right to borrow money in the State of New York if he chose to do so, and if he contracted to pay it in the State of New York he must be conclusively presumed to know that his contract would be governed by the law of that State. In all this there is not a shadow of unlawful intent to evade the law of Pennsylvania." *Equitable B. & L. Assn.* v. *Vance* (S. C.), 27 S. E. Rep., 274.

In the case of *Pioneer Loan Co.* v. *Cannon*, 96 Tenn., 603, we held that a note and mortgage of lands situated in this State to secure it and stipulating for the payment of five per cent. interest per annum, and five per cent. premium per annum, made payable to a building and loan association in Minnesota, were not usurious because a Minnesota contract, and authorized by the charter of the company and

the laws of that State. 83 Fed. Rep., 410, 411; 24 L. R. A., p. 295, note.

The loan secured by the mortgage executed by complainant to defendant company is payable in New Orleans, in the State of Louisiana, and each of the installment notes is so payable. The contract is essentially a Louisiana contract, and does not contravene any statute of this State. The defendant company, at the time this contract was made, was domiciled in the State of Louisiana; it had no local board or agency here, and was not carrying on business in this State in the sense of the statute. It was therefore not amenable to the statute requiring a foreign corporation to register its charter as a condition of doing business in this State. The Chancellor was therefore in error in decreeing that complainant was entitled to a settlement with this company upon the basis of the Act of 1895 governing foreign corporations. The settlement must be made upon the building and loan plan, as contemplated by the contract of the parties.

The next question presented is whether complainant, in making this settlement, is entitled to be credited with payments made to the old association. The solution of the question depends upon a proper understanding of the relations existing between the old and the new company. If the transaction with the two associations were distinct and independent of each other, then it is obvious the defendant company can only be charged with payments made to it; but if

it appears the defendant assumed the place of the old company and succeeded to all its rights, then it must be onerated with all its burdens.    Defendant, in its answer, says—viz.: "When the aforesaid New Orleans Loan, Building & Savings Association was in trouble, and saw that liquidation must ensue, this respondent agreed to take up all the loans of that association, provided a certain number of shares of stock were subscribed for in respondent's association. Whereupon the liquidators undertook to get the number of subscribers specified, and succeeded.    Respondent thereupon furnished the liquidators the face value of such mortgages as they were able to deliver respondent.    In the present case, the liquidators represented that complainant, C. J. Neal, owed them $500. . . .    Complainant, in his application to this respondent, stated that he owed said association the said sum of $500, and wanted to borrow that amount from respondent to pay it off, and respondent, believing such to be a fact, actually advanced this amount to the said Neal, as is evidenced by its check on the said Neal and by him indorsed to said liquidators.    The liquidators subsequently transferred the check back to respondent, who gave them credit for amount of same as advance payments upon the stock of investing members in respondent's association, who, through the inducements of said liquidators, transferred their stock to this respondent association.

"The advance made by this respondent association

to complainant was made on the building and loan plan, strictly in accordance with its laws and constitution, and in accordance with the laws of the State of Tennessee and Louisiana, the said Neal taking five shares of stock in respondent association, and pledging same and receiving, at a premium bid of $200, the sum of $500, this being the amount the said shares would be worth at maturity. Instead of requiring the immediate payment of this $200 premium, this additional amount was loaned to respondent. Respondent admits that complainant has paid $289 on said loan. Respondent denies there was only one loan and one continuing transaction. It avers there was one transaction with the New Orleans Building & Savings Association, which was entirely closed in the early part of 1893, and that in the month of April, 1893, complainant made a new mortgage, and received a new consideration from this respondent, the New South Building & Loan Association. Respondent denies that it now has, or ever had, any connection whatever with the New Orleans Building & Loan Association."

The proof shows that the only money received by this complainant from both of these associations was the sum of $500, advanced by the old company, and, the old company becoming insolvent and unable to carry out its contract, procured the new company to take its place. Complainant, at the instance of the liquidators of the old company, did make formal application for membership in the new company and

for a loan of $500, and did execute a formal deed of trust on the lot in question for the security of said loan. The proof shows that thereupon the old loan and deed of trust made to secure it, were canceled. The check for $500, given him by defendant company, was a mere form, and, upon being indorsed by complainant to the liquidators of the old company, was immediately transferred back to the new company and credited, as claimed by the latter, as advance payment upon the stock of the investing member. As stated by the president of the defendant company, this was just a method they had of paying the old company.

We are constrained to view the transaction with the new company as simply a continuation of the original contract. It was simply a transfer of the loan and mortgage from the old to the new company, accomplished by the execution of new instruments. The consideration for the new mortgage was the cancellation of the old mortgage and the extinguishment of the old note by the execution of the new note, which was effected under the substitutional arrangement between the companies.

The result is, that the decree of the Chancellor is reversed, and a settlement will be made between these parties upon the building and loan plan, and in said settlement the complainant will be credited with all payments made, both upon the old and new mortgage. The costs of the appeal will be divided.