## FRAWLEY, BUNDY & WILCOX v. PENNSYLVANIA CASUALTY CO.

(Circuit Court, M. D. Pennsylvania.   July 23, 1903.)

No. 1.

1. FOREIGN CORPORATIONS—LEGALITY OF SERVICE—SUBJECTION TO LAWS OF STATE.

Whether a corporation has subjected itself to the laws of a state other than that of its domicile, so as to be bound by service of process in such state in a personal action, made in accordance with its laws, is a question of general, and not of local, law.

2. SAME—DOING BUSINESS IN STATE.

To render service on a corporation, made in a state other than that by which it was created, binding upon it in a personal action, the corporation must have been actually and substantially engaged in doing business in the state, and the service must have been upon an agent so far representing the corporation in the state that he may properly be held, in law, an agent to receive such process in its behalf.

3. SAME.

A Pennsylvania insurance company wrote four accident policies on risks in Wisconsin, all of which were negotiated by correspondence, with the company, and not through the medium of any agent located in the state, or going into it for the purpose, and were issued and the premiums thereon paid at the office in Pennsylvania. *Held* that, even if such transactions could be considered a doing of business within the state at the time by the company, such business did not continue after the policies had been issued merely by reason of the fact that they were held by persons in the state; nor did the collection of a renewal premium on one of such policies through the cashier of a local bank, at the suggestion and for the supposed accommodation of the policy holder, constitute the doing of business within the state, so as to render the company subject to the jurisdiction of its courts.

4. SAME—AGENT ON WHOM SERVICE MAY BE MADE.

The collection by a Pennsylvania insurance company of a single renewal premium through the cashier of a bank in Wisconsin, at the request and for the supposed accommodation of the policy holder, did not make such cashier an agent of the company, representing it in the state, in such sense that service of process on him could bring the company within the jurisdiction of a court of that state, notwithstanding a state statute (Rev. St. Wis. 1898, §§ 2637, 1977) by which such agency is attempted to be created.

5. JUDGMENT—WANT OF JURISDICTION—SERVICE OBTAINED BY TRICK.

Plaintiff, a resident of Wisconsin, who was a policy holder in a Pennsylvania insurance company, desiring to obtain service on the company in Wisconsin in an action not connected with his policy, requested the company to send a receipt for a renewal premium to the cashier of a local bank, so that he might obtain it at the time of making payment; and it was so sent, with instructions to the cashier to collect the premium and deliver the receipt. Plaintiff paid the premium, and on the same day caused a summons in an action against the company to be served on the cashier, as agent; relying on a state statute which makes any person "who collects any premium for insurance" an agent of the company.

¶ 2. Foreign corporations doing business in state, see note to Wagner v. Meakim, 33 C. C. A. 585.

*Held*, that plaintiff having induced the company to send the collection to the cashier for the sole purpose of bringing it within the state jurisdiction, the service so obtained by a fraud or trick was invalid, and the company was not bound by a judgment rendered thereon.

6. SAME—COLLATERAL ATTACK.

A corporation against which an action was commenced in another state by the service of a summons which was invalid to give the court jurisdiction is not bound to appear and move to set aside the service, but may stand on its rights and attack the judgment rendered when it is sought to be enforced against it.

At Law.    Trial to the court without a jury by stipulation.

E. N. Willard, for plaintiffs.
W. S. Diehl, for defendant.

ARCHBALD, District Judge.    This case, by agreement of the parties, was tried by the court without a jury, and the material facts are as follows:

### The Facts.

(1) This action is brought on a judgment for $2,025.85 recovered in the Circuit Court of Eau Claire county, Wis., February 12, 1902, by the plaintiffs, Frawley, Bundy & Wilcox, a firm of lawyers of the city of Eau Claire, against the defendant, the Pennsylvania Casualty Company, a corporation of the state of Pennsylvania, engaged in the business of accident insurance, on a claim for legal services and disbursements.

(2) The Wisconsin suit was begun by a summons issued January 20, 1902, and served the same day, at the city of Eau Claire, on James T. Joyce, as agent of the defendant company, by R. D. Whitford, the plaintiffs' attorney, who made, under oath, the following return thereto:

"State of Wisconsin, Eau Claire County—ss.: R. D. Whitford, being first duly sworn, says that he resides in said county and state; that on the 20th day of January, 1902, at the city of Eau Claire, in said county, he duly and personally served the within summons on the Pennsylvania Casualty Company, a foreign corporation, the defendant named in said summons, the same being then and there an insurance corporation not organized under the laws of the state of Wisconsin, by then and there delivering to and leaving with James T. Joyce, a resident and citizen of this state, personally—he, the said James T. Joyce, being then and there an agent of the said defendant, who collected and received a premium for insurance for and on behalf of said defendant, and aided and assisted in transacting other business for the same —a true and correct copy thereof."

(3) The defendant company had immediate notice of this suit, the copy of the summons served on Mr. Joyce having been at once forwarded by him by mail to the home office of the company, at Scranton, Pa., and there duly received; but there was no other service or notice of the summons, and no appearance was put in or answer made thereto by the company, whereupon judgment was entered by the court by default on the date and for the amount stated.

(4) At the time of the service of the summons as aforesaid, the defendant company was doing no business and had no agent or representative in the state of Wisconsin, other than as herein set forth.    It had at one time insured the Chippewa Valley Electric Railway of Eau

Claire against damages from accidents to passengers and employés, and had had a number of claims to pay on that account. But the policy expired April 1, 1901, and was not renewed, and all claims upon it had been settled prior to January, 1902, when the plaintiffs brought suit. This policy was negotiated entirely outside of the state of Wisconsin, by correspondence and personal interview with the chief executive officers of the railway company at Boston, Mass., where they had their headquarters, and was issued at Scranton, Pa., and forwarded from there by mail to the president of the railway company at Boston, and the premium was paid by note dated and made payable at that city. About the same time an accident policy of $5,000 was issued by the defendant to J. R. Harrigan, of Eau Claire, superintendent of the railway, and another of like amount, at the instance of Mr. Harrigan, to James T. Joyce, who was a personal friend. Still another was issued to Roy P. Wilcox, one of the plaintiffs, who was attorney for the railway. Harrigan's policy was a donation, but those of Joyce and Wilcox were paid for. They were not issued in Wisconsin, however, but were applied for by mail, and forwarded in the same manner from the home office in Scranton. The four policies mentioned were the only ones of the defendant ever in force in that state.

(5) The bill for which the plaintiff brought suit and obtained judgment was a disputed one. It had been presented to the defendant and payment refused; and, in consequence of this, Mr. Wilcox, after consulting with his partner Mr. Bundy, and looking up the law of Wisconsin as to what was sufficient to constitute an agency for the service of process in that state, on a foreign insurance company, devised a plan by which, as he conceived, the plaintiffs would be able to sue the defendant company for their bill in the Wisconsin courts. He had, as we have seen, a policy of the defendant company on which a renewal premium was due December 30, 1901, of which fact he had received notice by mail from the secretary. In response to this he wrote, stating that he disliked to forward the money for a renewal without getting a receipt for it at the time (although the fact was that he had done so the preceding year, and his alleged reluctance was a mere pretense), and suggesting that, if the company would send the receipt to the cashier of some one of the banks at Eau Claire, he would pay such party upon its delivery to him. Among others mentioned was Mr. James T. Joyce, and in pursuance of the suggestion the renewal receipt was forwarded to Mr. Joyce by mail, with instructions to deliver it on payment of the premium called for. On receiving this communication, Mr. Joyce notified Mr. Wilcox to call, which he did, paying the premium and taking up the receipt. A few hours afterwards, on the same day, at the instance of Mr. Wilcox, and in pursuance of his plan, the summons was served on Mr. Joyce, as agent of the company; and he subsequently forwarded it to the company, as before stated, along with the premium collected, after first deducting from the latter an agent's commission.

(6) Foreign insurance companies, such as the defendant, are prohibited by the laws of Wisconsin from doing business in that state, except upon certain conditions, with which the defendant had not complied. It is also made a misdemeanor by the same for any one to act as agent

for any such insurance company without having first obtained a certificate from the insurance commissioner of the state; any one who collects a premium, or in any manner aids in doing so, being held to be an agent, unless he receives no compensation. All this was known to Mr. Wilcox when he suggested that the renewal receipt should be forwarded for collection to some one at Eau Claire, to whom he would pay on delivery.

## The Law.

The right of the plaintiff to recover upon these facts depends upon the validity of the service of the summons in the original action. If the case is controlled by the Wisconsin law, it must be conceded that, aside from the trick practiced to obtain it, the service was good, and the judgment based upon it cannot be disputed. Rev. St. Wis. 1898, § 2637, subd. 9; [1] Id. § 1977; [2] State v. N. W. Endowment Ass'n, 62 Wis. 174, 22 N. W. 135; State v. U. S. Mutual Accident Ass'n, 67 Wis. 624, 31 N. W. 229; Firemen's Ins. Co. v. Thompson, 155 Ill. 204, 40 N. E. 488, 46 Am. St. Rep. 335; Dixon v. Order of Ry. Conductors (C. C.) 49 Fed. 910. But the defendant is a Pennsylvania corporation, and not bound, therefore, by the laws of other states, except as by its acts it has subjected itself to them, and the question whether it has, is to be determined on principles of general jurisprudence, and not according to what may be held sufficient in any particular locality either by statute or judicial decision. Barrow Steamship Co. v. Kane, 170 U. S. 100, 18 Sup. Ct. 526, 42 L. Ed. 964. Except in matters of interstate commerce, a state may undoubtedly prescribe the conditions on which a foreign corporation shall be permitted to do business within it, and may include therein a provision with regard to the service of process on its agents. Lafayette Ins. Co. v. French, 18 How. 404, 15 L. Ed. 451. Where, therefore, a foreign corporation does business in such state, it will be presumed to have assented to these terms. St. Clair v. Cox, 106 U. S. 350, 1 Sup. Ct. 354, 27 L. Ed. 222; Merchants' Mfg. Co. v. Grand

---

[1] Section 2637. Actions against corporations shall be commenced in the same manner as personal actions against natural persons. The summons and the accompanying complaint or notice, aforesaid, shall be served, and such service held of the same effect as personal service on a natural person, by delivering a copy thereof as follows: * * * (9) If against any insurance corporation not organized under the laws of this state, to the agent or attorney thereof having authority therefor by appointment under the provisions of sections 1915, 1953 or 1966-32, or to any agent of either such corporation who shall solicit insurance on its behalf or on behalf of any property owner or person desiring insurance, or who transmits an application for or a policy of insurance to or from any such corporation, makes any contract for insurance, collects or receives any premiums therefor, or adjusts, settles, or pays a loss for such corporation, or aids or assists in doing either or in transacting any business for the same, or on any person who advertises to do any such thing.

[2] Section 1977. Whoever solicits insurance on behalf of any insurance corporation or person desiring insurance of any kind, or transmits an application for or a policy of insurance, other than for himself, to or from any such corporation, or who makes any contract for insurance, or collects any premium for insurance, or in any manner aids or assists in doing either, or in transacting any business of like nature for any insurance corporation, or advertises to do any such thing, shall be held to be an agent of such corporation to all intents and purposes unless it can be shown that he receives no compensation for such services.

Trunk Ry. (C. C.) 13 Fed. 358; U. S. v. American Bell Telephone Co. (C. C.) 29 Fed. 17; Berry v. Indemnity Co. (C. C.) 46 Fed. 439. But it is essential in every case in which personal jurisdiction over such a corporation is claimed that there shall have been an actual and substantial transacting of business by it within the state, and the process by which jurisdiction is sought to be obtained must have been served on one who is truly representative of the corporation. St. Clair v. Cox, 106 U. S. 350, 1 Sup. Ct. 354, 27 L. Ed. 222; Fitzgerald Construction Co. v. Fitzgerald, 137 U. S. 98, 11 Sup. Ct. 36, 34 L. Ed. 608; Mex. Cen. Ry. v. Pinkney, 149 U. S. 194, 13 Sup. Ct. 859, 37 L. Ed. 699; Goldey v. Morning News, 156 U. S. 518, 15 Sup. Ct. 559, 39 L. Ed. 517; Barrow Steamship Co. v. Kane, 170 U. S. 100, 18 Sup. Ct. 526, 42 L. Ed. 964; United States v. American Bell Telephone Co. (C. C.) 29 Fed. 17; St. Louis Wiremill Co. v. Consolidated Barb Wire Co. (C. C.) 32 Fed. 802. The doctrine is thus authoritatively stated by Mr. Justice Peckham in Conn. Life Ins. Co. v. Spratley, 172 U. S. 602, 19 Sup. Ct. 308, 43 L. Ed. 569:

"In a suit where no property of the corporation is within the state, and the judgment sought is a personal one, it is a material inquiry to ascertain whether the foreign corporation is engaged in doing business within the state; * * * and, if so, the service of process must be upon some agent so far representing the corporation in the state that he may properly be held, in law, an agent to receive such process in behalf of the corporation."

These jurisdictional facts the state necessarily cannot control, and it cannot, therefore, declare or prescribe in advance what shall be taken as the doing of business within its borders, nor what shall constitute a sufficiently representative agency. Both must be determined by the courts upon the facts as they arise, according to the principles of law which apply. We are not concerned, therefore, in the present instance, with what may be the law of Wisconsin, nor with the view in this regard taken by its courts. That state cannot extend its jurisdiction personally over nonresident parties, corporate or otherwise, which have never undertaken in fact to enter it. According to the statutes referred to above, the service of process on any person in Wisconsin who merely advertises himself as agent of a foreign insurance company, whether authorized to do so or not, is binding on the company—a position, which, if sustained, would put such corporations at the mercy of every arrant knave who saw fit to so declare that he represented them.

The authority of the court of Eau Claire county to enter judgment against the defendant company as it did depends, therefore, on the two questions: (1) Was the company at the time engaged in business in the state of Wisconsin? And (2) was Joyce such a representative of it that the service of process upon him must be held good? Both, as it seems to me, are to be answered in the negative. As to the first, the mere taking of the four accident policies which the company had at one time in the state can hardly be said to have been a transaction of business within it. These policies were all negotiated by correspondence with the company, and not through the medium of agents located in the state, or going into it for that purpose; and the business, whatever it was, was done at the home office, where the applications

were received and passed upon, the payment of premiums made, and the policies written and forwarded. Allgeyer v. Louisiana, 165 U. S. 578, 17 Sup. Ct. 427, 41 L. Ed. 832; Marine Insurance Co. v. St. Louis Ry. (C. C.) 41 Fed. 643; Hazletine v. Fire Ins. Co. (C. C.) 55 Fed. 743; Romaine v. Ins. Co. (C. C.) 55 Fed. 751; Caesar v. Capell (C. C.) 83 Fed. 403; East. Bldg. & Loan Ass'n v. Bedford (C. C.) 88 Fed. 7; Neal v. New Orleans Ass'n, 100 Tenn. 607, 46 S. W. 755; West Mass. Fire Ins. Co. v. Girard Point Storage Co., 6 Pa. Super. Ct. 288; People's Bldg. Ass'n v. Berlin, 201 Pa. 1, 50 Atl. 308. But it is not necessary to determine that question here. Whatever had been done in that direction was ended. The Electric Railway policy had run out, and all claims under it had been adjusted and settled. The associated policy donated to Harrigan had in all probability also lapsed. The existence of the Joyce and Wilcox policies, and the collection of the premium on the latter in the way that has been described, is all that there is, therefore, on which to charge the defendant. But the mere existence of these two policies in the hands of persons resident in the state does not make out the doing of business within it by the company, with whom they were negotiated and by whom they were written entirely outside of it. The business, such as it was, was done and completed when they were issued. Otherwise the mere change of residence into the state by persons holding policies obtained elsewhere would be enough to establish the charge, and that will hardly be contended for. If this be so, the case is brought down to the single circumstance that the premium was collected by Joyce on the Wilcox policy. But it is well settled that a single, isolated act is not the carrying on of business by a foreign corporation, within the meaning of the law, whether the question arises under statutory provisions which prohibit it unless a license for the purpose shall first be obtained, or the transaction is sought, as here, to be made the basis of liability to legal process. It was so held with regard to the single act of making a contract within the state for the construction of machinery, there being no purpose to do anything further there (Cooper Mfg. Co. v. Ferguson, 113 U. S. 727, 5 Sup. Ct. 739, 28 L. Ed. 1137); to occasional purchases by a foreign corporation within the state, no office being kept, nor any part of its general business operations carried on there (Good Hope Co. v. Ry. Fencing Co. [C. C.] 22 Fed. 635); to the purchasing of securities and accepting a mortgage upon property within the state (Gilcrist v. Helena Co. [C. C.] 47 Fed. 593); to the negotiation of bonds by the president of an Alabama company in New York City (Clews v. Iron Co. [C. C.] 44 Fed. 31); to the making of a loan to a citizen of the state, who contracts to repay it at the domicile of the corporation, securing it by a mortgage on land within the state (Caesar v. Capell [C. C.] 83 Fed. 403; East. Bldg. Ass'n v. Bedford [C. C.] 88 Fed. 7; Neal v. New Orleans Ass'n, 100 Tenn. 607, 46 S. W. 755); to the purchase of a note, or the taking of a mortgage for an indebtedness past due (Commercial Bank v. Sherman, 28 Or. 573, 43 Pac. 658, 52 Am. St. Rep. 811; Florsheim Dry Goods Co. v. Lester, 60 Ark. 120, 29 S. W. 34, 27 L. R. A. 505, 46 Am. St. Rep. 162); to the single sale of its products by a foreign corporation, and taking a guaranty therefor (D. & H. C. Co. v. Mahlenbrock, 63 N. J. Law, 281,

43 Atl. 978, 45 L. R. A. 538); to an isolated loan within the state by a cashier of a foreign banking company (Suydam v. Morris Canal & Banking Co., 6 Hill, 217); to the adjustment of a loss in New York on an insurance secured in Pennsylvania (People v. Gilbert, 44 Hun, 522); and to the settlement of a debt for goods sold on an order sent by mail (New Jersey Steel Tube Co. v. Riehl, 9 Pa. Super. Ct. 220). For further instances, see 13 Am. & Eng. Enc. Law, p. 869 et seq.    In the face of these authorities, it cannot be successfully maintained that the single act of collecting a renewal premium through the cashier of a bank at the suggestion and for the supposed accommodation of the holder of the policy, such as we have here, constituted the transaction of business within the state, so as to make the defendant liable to the jurisdiction of its courts.

It is equally clear that Joyce was not an agent upon whom service of process to bind the company could be made.    His agency was of the most casual and temporary character; being confined, as we have just seen, to the single purpose of turning over to Wilcox the renewal receipt, and receiving and transmitting the premium paid for it.    He was a mere conduit—to use the expression of Judge Drummond in Lamb v. Bowser, 7 Biss. 372, Fed. Cas. No. 8,009—for whom the company was not responsible, outside of the one transaction in which he was retained.    It would be a travesty, under the circumstances, to hold that he thereby became its accredited representative, actually standing for the time being for the corporation itself.    Only by the narrow vision of the state law, by which the plaintiffs undertook to be guided, and upon which they now seek to stand, could any such claim be made for him.    That the character of the agent must be thoroughly representative, in order to have the service efficient, is abundantly maintained by the authorities already cited.    As declared in St. Clair v. Cox, 106 U. S. 350, 1 Sup. Ct. 354, 27 L. Ed. 222, it is open to show in every such case "that the agent stood in no representative character to the company; that his duties were limited to those of a subordinate employé or to a particular transaction"—observations that are peculiarly pertinent here.    For illustrative instances where the agency was or was not held sufficient, reference may be made to Conn. Mutual Life Ins. Co. v. Spratley, 172 U. S. 602, 19 Sup. Ct. 308, 43 L. Ed. 569; Block v. R. R. (C. C.) 21 Fed. 529; Mex. Cen. Ry. v. Pinkney, 149 U. S. 194, 13 Sup. Ct. 859, 37 L. Ed. 699; and Maxwell v. R. R. (C. C.) 34 Fed. 286.    While differing in the result reached, they all agree to the principle stated in Mutual Life Ins. Co. v. Spratley, already quoted, that "the service of process must be upon some agent so far representing the corporation in the state that he may properly be held, in law, an agent to receive such process in behalf of the corporation." Admittedly, there was no approach to anything of this kind in the present instance, and the attempted service must therefore fail.

But there is still another ground on which the service must be declared invalid.    It was secured by a trick which the law will not countenance.    The assumed reluctance of the plaintiff Wilcox to remit his money to the home office to pay for the renewal of his policy was made out of whole cloth.    It was a mere pretense to entrap the company into doing something which, as he assumed, would make it liable

to suit in the courts of Wisconsin for the disputed bill of the firm.    If his position was correct, that the collection of his premium through Joyce was the transacting of business by the company within the state, and made Joyce its agent, he thereby induced both the company and Joyce to violate the law of the state (Rev. St. Wis. 1898, § 1978); and Joyce, in undertaking to act as agent without a license, to commit a misdemeanor (Id. §§ 1976, 1977).    But the company did not wittingly offend.    Whatever was done was solely in response to the suggestion of Wilcox, and for his assumed security and accommodation, and it is therefore to be laid to his charge.    Having enticed the company within reach of a summons in this way for the benefit of his firm—Mr. Bundy, another member of it, being also a party to the scheme—clearly the plaintiffs cannot retain the advantage thus fraudulently secured, to say nothing of the violation of law involved.    It is said by Fuller, C. J., in Fitzgerald Construction Co. v. Fitzgerald, 137 U. S. 98, 11 Sup. Ct. 36, 34 L. Ed. 608:

"If a person is induced by false representations to come within the jurisdiction of a court for the purpose of obtaining service of process upon him, and process is there served, it is such an abuse that the court will, on motion, set the process aside."

The law is declared in the same terms by Lyon, J., in Townsend v. Smith, 47 Wis. 623, 3 N. W. 439, 32 Am. Rep. 793.    In that case the defendant was induced to come from Chicago to Milwaukee on the pretense that the plaintiff wanted to advertise his hotel for sale in the defendant's paper, and desired him to examine the property, offering to pay his expenses if he would.    This was held to be a fraud upon him, which the law would not sustain, "affecting as it did the integrity of the process of the court."    The suggestion that Wilcox did no more than he was entitled to do, in requiring the receipt to be sent to some one who could deliver it to him contemporaneously with the payment of the premium, entirely misses the point.    If that was all there was to it, there would, of course, have been no harm.    It is the artifice that lay hid in it that was the offense.    A fraud or trick is always put forward with a fair face.    It would not succeed without it.    In Wood v. Wood, 78 Ky. 624, the defendant, a teamster, residing in Kentucky, was induced to go into Tennessee, where he was served with process, by the representation that he could make a profit in hauling from a place in that state to one in Kentucky; and, as this was true, it was contended that there was no fraud.    But it was said by Hines, J.:

"It is not the truth or falsity of the representation that constitutes the fraud. It is the concealed motive lying in the breast of the appellant, and which prompted him to make the representation."

And upon the general question of the liability of the defendant to the service it was further said:

"As he did not wittingly submit himself to the jurisdiction of the courts of Tennessee, but was induced by a device on the part of the appellant to go within the borders of that state, appellant will not be permitted to take advantage of his own wrong, and thus receive benefits that would not have accrued but for the fraud."

It may be argued that the defendant should have moved to set aside the service, and cannot attack the judgment collaterally, but I do not

so understand the law. Wood v. Wood, 78 Ky. 624; Duringer v. Moschino, 93 Ind. 495; Dunlap v. Cody, 31 Iowa, 260, 7 Am. Rep. 129. This course was open to the defendant, but it was not confined to it. Had it, indeed, applied to the Wisconsin courts, and been refused, it would possibly have laid itself open to the charge of having elected its remedy, and been held to have submitted to that jurisdiction. It certainly could not have gone on without doing so (Fitzgerald Construction Co. v. Fitzgerald, 137 U. S. 98, 11 Sup. Ct. 36, 34 L. Ed. 608), and would therefore have been compelled in the end to do just what it has done now—stand on its rights, and attack the judgment rendered, when sought to be enforced against it. That judgment was by default, and depends for its validity on the quality of the service of the summons, as well as its formal sufficiency, and having been secured, as it plainly was, by a trick or fraud, the whole proceedings are affected, and the plaintiffs are entitled to take nothing thereby.

Judgment is directed to be entered in favor of the defendant.