FOURNET, Justice.
 

 The Fidelity & Deposit Company of Maryland instituted this suit against H. J. Bussa to recover the sum of $26,161.91, the amount paid by it to cover defalcations of the defendant while he was cashier of the Vivian State Bank under three indemnity bonds issued to the bank, and is appealing from a judgment maintaining the defendant’s exceptions of no cause and no right of action and rejecting its demands after a trial on the merits.
 

 Since the defendant is insisting in answer to the plaintiff’s appeal that we pass on his plea to the jurisdiction of the court, we feel this should receive our first consideration.
 

 The defendant’s plea to the jurisdiction is based on the allegation that the jurisdiction of the Caddo Parish court over him was obtained when the plaintiff, through fraud and deceit, .inveigled: him to enter that parish for the. purpose of obtaining service of citation on him. When-.this exception was first presented,to the court, Judge Stephens, then presiding, maintained it. Later, on an application for rehearing, he reversed his previous ruling, but it was agreed by both parties to the suit that this plea would be re-submitted to the judge succeeding Judge Stephens for consideration, as though it had ■never been passed on, and this judge, in passing on the same, said: “I’f the plea to the jurisdiction had been before me originally I would have sustained it, but inasmuch as the case has now been tried on its merits, it will probably be better to let the ruling of Judge Stephens stand, and pass on to the other exceptions, and the merits.”
 

 No fundamental principle of law is more firmly entrenched in the law of all jurisdictions than the principle that a civil suit must be instituted at the domicile of the person being sued. In our state this principle is couched in the following language: “It is a general rule in civil matters that one must be sued before his own judge,, that is to say, before the judge having jurisdiction over the place where he has his domicile or residence * * Article 162 of the Code of Practice. Like all general rules, however, this one is subject to a number of exceptions, the one pertinent here being that a court may take jurisdiction over a nonresident when personal service is made on that 'person within the confines of the court’s jurisdiction. But another universally recognized rule of law is that courts have ' no jurisdiction in a civil suit when such suit is based on personal service of a nonresident when that person has been “brought within the reach of its process wrongfully or fraudulently, or by deceit or by any other improper device” on the part of the plaintiff. 15 C.J. 800, § 98. See, also, 21 C.J.S., Courts, p. 122, § 83; 14 Ám.Jur. 382, Section
 
 *1045
 
 185; 7 R.C.L. 1040, Section 71; Restatement of the Conflict of Laws, 117, Section 78; 6 Am.St.Rep. 180; Fitzgerald & Mallory Construction Co. v. Fitzgerald, 137 U.S. 98, 11 S.Ct. 36, 34 L.Ed. 608; Frawley, Brundy & Wilcox v. Pennsylvania Casualty Co., C.C., 124 F. 259; Cavanagh v. Manhattan Transit Co., C.C., 133 F. 818; Steiger v. Bonn, C.C., 4 F. 17; Blair v. Turtle, C.C., 5 F. 394; Townsend v. Smith, 47 Wis. 623, 3 N.W. 439, 32 Am.Rep. 793; and Siro v. American Express Co., 99 Conn. 95, 121 A. 280, 37 A.L.R. 1250.
 

 On July 31, 1931, the plaintiff paid the Vivian State Bank, under three fidelity bonds issued to it by the company insuring the bank against losses suffered through the dishonesty of certain of its employees — the first, for $20,000, issued on July 23, 1924; the second, for $25,000, issu'ed on October 21," 1930; the third, for $50,000, issued on February 25, 1931 — the sum .of $26,161.91, the amount allegedly lost by the bank through the actions of the defendant. On March 15, 1935, 'the plaintiff instituted suit against Bussa to recover this amount, on the theory of legal subrogation, and did not appeal when the suit was dismissed on the defendant’s exceptions of no cause and no right of action.
 

 Bussa moved to San Antonio, Texas, in April of 1935 and has resided there ever since. Some time in 1939, four years after the former suit against him had been dismissed, A. B. Hall, of Dallas, Texas, one of the present attorneys representing the plaintiff, was in the home office of the company in Baltimore, Maryland, and the entire record in the case, was turned over to him, because, as he testified. Bussa was then a resident of Texas. After his return to Dallas, Mr. Hall personally called on Bussa at his office in San Antonio and there discussed the matter. Bussa informed Hall that he did not feel he owed the plaintiff anything, either morally or legally, for he had made full restitution for his defalcations, having paid the Vivian State Bank, through its liquidator, the sum of $83,000. Hall and Bussa apparently became rather friendly after this, Hall, on one occasion, going to Bussa’s ranch for a. hunt. From time to time after this first meeting, Hall contacted Bussa and continued to discuss the matter, suggesting to Bussa that he would have to file suit if some kind of a compromise could not be worked out. Finally, in the latter part of 1940, Hall again advised Bussa that he would institute suit to recover the 'amount paid the bank by the plaintiff because of Bussa’s alleged defalcations unless he agreed to a compromise and Bussa advised Hall that he would resist any action taken against him by the company. At Hall’s suggestion, however, that some time previously he had said his views might be affected if his (Bussa’s) attorney in Shreveport, Louisiana, Mr. Cook, advised him he had been in error in his conclusion that he (Bussa) was not liable to the plaintiff, and that Bussa advise with this attorney in his (Hall’s) presence before definitely refusing any further negotiations toward an amicable settlement, Bussa agreed to go with Hall to discuss the matter with Mr. Cook and stated they might do a little fishing after the conference. Hall, who was then in San Antonio, stated he
 
 *1047
 
 would have to return to Dallas and could not make the trip at that time, but would arrange for the conference at a later date. Some two weeks later, Hall called Bussa on the telephone and asked him to meet him (Hall) at the Gardener Hotel in Shreveport the next day, and Bussa agreed to do so. Hall went to Shreveport by train, arriving there some time in the afternoon. Bussa • drove to the city in his car and arrived about 8 that night, contacting Hall immediately upon his arrival and arranging to have some oysters with him. After eating, they contacted Mr. Cook and made an appointment with him for the following morning, October 18. At this conference Mr. Cook advised Bussa that the plaintiff had no enforceable claim against him but that if they insisted on instituting suit to insist that he be sued at his domicile in San Antonio, Texas. (It appears that under the Texas law whatever claim the plaintiff may have had or thought it had against the defendant had prescribed.) After this conference Bussa and Hall left Cook’s office together and Hall asked Bussa what his plans were. Bussa advised that he would be unable to make the fishing trip they had talked about because he had some business in East Texas and wanted to leave immediately. However, Hall invited him to have lunch with him and Bussa, after much protestation on Hall’s part, agreed to meet him at the hotel at 12:30 for lunch Upon Hall’s suggestion that if he accepted this invitation he would go to the offices of his associate attorneys in Shreveport to advise them of what had transpired in order that he might obtain their reaction with respect thereto and determine what course they would pursue so that he might inform Bussa.
 

 Instead of going to the office of his associates for the purpose stated, Hall and his associates immediately filed the petition (which had been previously prepared and had been verified only the day before by one of Hall’s associates, obviously before Bussa arrived in Shreveport), obtained the services of C. C. Schober, one of the deputy sheriffs, and sought to have him serve the petition on Bussa while he was fulfilling his luncheon engagement with Hall. The deputy sheriff suggested it would be better to serve Bussa before lunch- because he (the deputy sheriff) did not know Bussa, to which, Schober testified, “Mr. Klein (Hall’s associate) agreed * * * to save any chance of missing him later on.” The deputy sheriff, commenting further, said: “So we all agreed upon that and I accompanied him down there and he introduced me to Mr. Bussa and I served the papers on him.” That Bussa did not expect this is, we think, well expressed by Hall himself, who, in testifying on behalf of the plaintiff, stated that when he left Bussa at the hotel after the service of the petition, he told him that he (Hall) “was sorry that he (Bussa) was shocked by the suit.” And, in answer to the question “Why didn’t you want him served before lunch ?” replied: “I suspected maybe he would not enjoy the lunch after he was served the citation.” Further, he did not deny Bussa’s version of his reason for asking him (Bussa) to have lunch with him (Hall) but, instead, commented when questioned in this respect: “I do not remember precisely what I told him.”
 

 
 *1049
 
 It is our opinion that this evidence unmistakably shows the proposed conference with the defendant’s attorney in Shreveport was a mere pretext and was proposed by Hall for the ostensible purpose of getting the defendant into the jurisdiction of the Caddo Parish courts in order that he might be served with process.
 

 We therefore conclude that the trial judge erroneously overruled the defendant’s plea to the jurisdiction.
 

 For the reasons assigned, the plea to the jurisdiction is maintained and plaintiff’s suit is dismissed, at its cost.
 

 HIGGINS, J., takes no part.