AMUSEMENT EQUIPMENT, INC., Plaintiff-Appellant,

v.

Carl Heinz MORDELT, Heinz Mordelt GMBH and Co. K.G. "Heimo", Defendants-Appellees.

No. 84–3571.

United States Court of Appeals, Fifth Circuit.

Dec. 31, 1985.

John L.A. Bond, pro se.

Carl D. Rosenblum, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, La., for Amusement Equipment, Inc.

Arthur L. Ballin, Frank C. Dudenhefer, Jr., New Orleans, La., for defendants-appellees.

Before GOLDBERG, REAVLEY and GARWOOD, Circuit Judges.

GOLDBERG, Circuit Judge.

It all started out innocently enough with a contract to deliver a mechanical display elephant and four remote control cars. The German engineering of appellee Heimo Heinz Mordelt GMBH & Co. K.G. ("Heimo") would boost the efforts of Florida's Amusement Equipment, Inc. ("Amusement") to amuse and entertain for profit. But where Hannibal's elephants managed to cross the snowy Alps with relative ease, this elephant and its vehicular entourage had an unexpected layover in a London airport on the way to their new world. Thus, for want of a transatlantic flight, Amusement's waiting truck left Florida for New Orleans without its prized quarry, which Amusement had hoped to display there at the convention of the International Association of Amusement Parks and Attractions ("IAAPA"), an Illinois corporation.

Heimo, however, is a member in good standing of the IAAPA, and its general manager, appellee Karl Heinz Mordelt ("Mordelt") attended the convention. Perhaps with visions of *Grace v. MacArthur*[1] dancing through its corporate head, Amusement hunted Mordelt down, found him at the Marriot Hotel, served him and Heimo with process, and plunged the district court and us into the purgatory of transient jurisdiction. Finding that the rule of transient jurisdiction has suffered a fate akin to that of the once proud but now extinct dinosaurs, the district court, 595 F.Supp. 125, dismissed as to both defendants. Because we are unwilling, absent explicit instructions from above, to ferry this rule across the river Styx, we reverse and remand as to Mordelt. However, we find that jurisdiction over the corporation is not proper under Louisiana law, and we therefore affirm the district court's dismissal of Heimo.

## THE FACTS

During September of 1983, the owner of Amusement, John Bond, visited Heimo's factory in West Germany and purchased some remote controlled boats for exhibition at an amusement industry trade show to be held in Jacksonville, Florida. Bond also discussed with representatives of Heimo the possibility of acquiring certain of Heimo's products for exhibition at the Sixty-Fifth Annual Convention and Trade Show of the IAAPA, to be held in New Orleans from November 17 through 20, 1983.

Bond was satisfied with the Heimo equipment exhibited at the Florida trade show. Consequently, on October 25, 1983, Bond contacted Mordelt by telephone to procure additional products for exhibition at the New Orleans trade show. Amusement Equipment agreed to purchase from Heimo one animated display elephant, four remote controlled automobiles, and certain accessory equipment for a price of DM 37,130, which, at the time, equalled U.S. $14,-

1. 170 F.Supp. 442 (E.D.Ark.1959) (service of process on defendant while in airplane over Arkansas sufficient to give Arkansas court jurisdiction).

295.00. Heimo understood that Amusement intended to display the products at the New Orleans trade show scheduled to begin on November 17, 1983. Amusement needed the products delivered to Miami in sufficient time before the trade show so that they could be transported by its truck to New Orleans. Accordingly, Bond demanded that the products be delivered to Miami by November 12, 1983. Heimo required prepayment before it would ship the merchandise overseas.

On November 3, 1983, Amusement sent Heimo a telex stating that payment had been made by wire transfer on November 2, 1983, but that such payment was conditioned upon delivery of the products in Miami by November 12, 1983. If delivery of the goods could not be accomplished by that time, Amusement directed that its order be cancelled and that the funds be returned. On November 4, 1983, Heimo telexed Amusement that if the funds were received by its bank by November 7, 1983, Heimo could "guarantee [compliance with Amusement's] delivery requirements." On November 7, 1983, Heimo learned from its bank that Amusement's payment had been received. Heimo then arranged for the shipment of the merchandise by a German freight forwarder, Max Grunht, an independent contractor. Grunht received the merchandise at the Stuttgart Airport on November 9, 1983. Heimo directed that the goods be shipped to London on November 10, 1983, for immediate transfer to a Miami bound flight departing later the same day. Heimo telexed the shipping information to Amusement the same day. Also on November 9, 1983, Heimo sent Amusement an order confirmation, which provided that the merchandise was shipped C.I.F. "C.I.F." is the same as "F.O.B.," which means that title and the risk of loss passed to the purchaser upon delivery of the merchandise to the freight forwarder.

On November 12, 1983, Amusement telephoned Heimo that the merchandise had not yet arrived in Miami. Upon investigating the matter, Heimo learned that the airline departing London had refused to accept the shipment, since an earlier flight had been cancelled and freight from that flight had been given priority. The airline allowed the merchandise to remain in London without informing the freight forwarders, Heimo, or Amusement. Later on the 12th of November, Amusement telexed Heimo that the contract was cancelled and requested return of the funds. Heimo refused to return the funds.

Heimo is a member of the International Association of Amusement Parks and Attractions, the sponsor of the New Orleans trade show. Consequently, on November 20, 1983, Mordelt arrived in New Orleans to attend the show. Amusement alleges that Mordelt attended the show as a representative of Heimo. Thus, on November 21, 1983, Mordelt was personally served in New Orleans for himself and for his employer, Heimo.

Other than their presence at the trade show and their knowledge that Amusement needed the goods for display at the show, Mordelt and Heimo had no prior connection to New Orleans or Louisiana. They have no representatives of any sort in Louisiana, nor have they ever paid taxes to Louisiana. They have no assets in Louisiana, they have not advertised in any Louisiana news media, they are not listed in any Louisiana telephone directory, and they did not display any products at the trade show.

## DISPOSITION BELOW

The district court assumed for the sake of argument that both Mordelt and Heimo had been properly served under both La. Code Civ.Proc. art. 6(1)[2] and the Louisiana Long-Arm Statute, La.Rev.Stat.Ann. § 13:3201.[3] Finding that the rule of tran-

---

**2.** "Jurisdiction over the person is the legal power and authority of a court to render a personal judgment against a party to an action or proceeding. This jurisdiction must be based upon:

(1) The service of process on the defendant, or on his agent for service of process."

**3.** This section reads, in relevant part:

A court may exercise personal jurisdiction over a nonresident, who acts directly or by an

sient jurisdiction—under which a court gains personal jurisdiction over any defendant who has been served with process while present within the forum state—has, however, been fatally undermined by *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), the court proceeded to dispose of the jurisdictional question with a minimum contacts analysis under the Due Process Clause. This analysis produced the conclusion that both Mordelt and Heimo lacked those minimum contacts, without which the court's assertion of jurisdiction would offend due process.[4]

## DISCUSSION

"[T]he power of a federal court entertaining a suit based on diversity of citizenship to exercise jurisdiction over the persons of non-resident defendants turns on two independent considerations. The law of the state in which the court sits must confer jurisdiction over the persons of the defendant, and if it does, the exercise of jurisdiction must comport with basic due process requirements of the United States Constitution." *Hydrokinetics, Inc. v. Alaska Mechanical, Inc.*, 700 F.2d 1026, 1028 (5th Cir.1983) (quoting *Product Promotions, Inc., v. Cousteau*, 495 F.2d 483, 489 (5th Cir.1974)), *cert. denied*, 466 U.S. 962, 104 S.Ct. 2180, 80 L.Ed.2d 561 (1984).

### A. *State Law*

■ Although we have found no recent pronouncements on the issue, we conclude that Louisiana law does confer jurisdiction over Mordelt. "[A] court may take jurisdiction over a nonresident when personal service is made on that person within the confines of the court's jurisdiction." *Fidelity & Deposit Co. of Maryland v. Bussa*, 207 La. 1042, 22 So.2d 562, 563 (1945); *see*

*also Roper v. Brooks*, 201 La. 135, 9 So.2d 485, 490 (1942); *Stewart v. Litchenberg*, 148 La. 195, 86 So. 734, 735 (1920). These cases clearly support jurisdiction over the individual Mordelt.

■ As to the corporation Heimo, we have found no cases holding one way or the other that service of process upon an agent of a corporation temporarily present within the state is sufficient to establish jurisdiction over the corporation. Amusement has been unable to produce, and we have been unable to find, any authority for the proposition that Heimo is amenable to service of process under Louisiana law. An examination of the several Louisiana statutes pertaining to service of process on foreign corporations leads us to conclude that, with respect to non-Louisiana related causes of action, Louisiana does not assert jurisdiction over foreign corporations that have not appointed an agent for service of process in Louisiana courts and that do not and have not done business in Louisiana, regardless of whether an officer of the corporation happens to be temporarily present in the state. *See* LSA–R.S. 13:3201 (*supra* note 3); LSA–R.S. 13:3471(1) ("service of process ... on a cause of action resulting from such business activity in this state"). The cause of action against Heimo does not arise from Mordelt's presence in Louisiana, and Heimo is therefore not amenable to service of process under Louisiana law. We therefore do not reach the question whether the exercise of jurisdiction over Heimo would comport with the due process clause.

### B. *Due Process and Transient Jurisdiction*

It is an historical truism that the transitory presence of an individual in a state to

---

agent, as to a cause of action arising from the nonresident's
    (a) transacting any business in this state;
    (b) contracting to supply services or things in .this state.
In light of our recent decision that "Louisiana courts will insist upon a nexus between business transacted in the state and an asserted claim as a prerequisite to the exercise of in personam jurisdiction under that state's long-arm statute," *Farnham v. Bristow Helicopters, Inc.*, at 536, 776

F.2d 535 (1985), we find that the required nexus is not present here. However, because process was properly served on Mordelt while present within the state, there is no need for a long arm.

4. Had there not been personal service on Mordelt while he was present in Louisiana, we would be inclined to affirm the District Court's minimum contacts analysis on the basis of *Growden v. Ed Bowlin and Associates, Inc.*, 733 F.2d 1149 (5th Cir.1984).

which he had no attachment or connection other than a momentary pause in his movement to other places sufficed to justify a state's exercise of personal jurisdiction. This notion developed in the days when travel was difficult and a plaintiff seeking to sue a defendant had to choose between traveling to the defendant's state or waiting to catch his prey in the unlikely chance that he wandered into the plaintiff's state.

We find it somewhat ironic that we are asked today to discard the rule in these modern times of elastic, expansive, and inexpensive travel. Nonetheless, while changes in the technological landscape have lessened the rule's harsh impact, the legal landscape has changed as well. Theories of jurisdiction grounded on notions of state sovereignty, which undergirded the rule, have been eroded by theories premised on defendants' due process rights.

The transient rule of personal jurisdiction has been much maligned by the commentators.[5] After *Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), in which the Supreme Court extended the due process requirements of *International Shoe Company v. State of Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), to the exercise of quasi in rem jurisdiction, commentators sounded the

rule's death knell.[6] Even those commentators who had supported the rule expressed considerable doubt as to its continuing viability.[7]

The source of the commentators' gloom rests principally on the following statement in *Shaffer.* "We therefore conclude that *all* assertions of state-court jurisdiction must be evaluated according to the standards set forth in *International Shoe* and its progeny." 433 U.S. at 212, 97 S.Ct. at 2584 (emphasis added). We concede that this sweeping assertion undermines the correspondingly categorical claim that "[i]t has long been black letter law that personal service within its geographical area establishes a court's personal jurisdiction over the defendant." *Donald Manter Company, Inc. v. Davis,* 543 F.2d 419, 420 (1st Cir.1976). However, while *Shaffer* may have rendered the black letter gray, we do not think the letter of the law has become so pale that it can be read only with conjurer's glasses.[8]

All but one of the cases in which the Supreme Court has required an *International Shoe* minimum contacts analysis have involved in one way or another substituted service of process within the state, or service of process outside the state.[9] In

---

**5.** See, e.g., Ehrenzweig, *The Transient Rule of Personal Jurisdiction: The "Power" Myth and Forum Conveniens,* 65 Yale L.J. 289 (1956); Leflar et al., *Transient Jurisdiction—Remnant of Pennoyer v. Neff: A Round Table,* 9 J.Publ.L. 281 (1960).

**6.** See, e.g., Bernstine, *Shaffer v. Heitner: A Death Warrant for the Transient Rule of In Personam Jurisdiction,* 25 Vill.L.Rev. 38 (1979).

**7.** See, e.g., 4 Wright and Miller, *Federal Practice and Procedure,* § 1064 (Supp.1985); *Restatement (Second) of Judgments* § 5 comment a (1982).

**8.** Post-*Shaffer* cases that support the continuing vitality of transient jurisdiction include the following: *Driver v. Helms,* 577 F.2d 147 (1st Cir. 1978), *cert. denied,* 439 U.S. 1114, 99 S.Ct. 1016, 59 L.Ed.2d 72 (1979); *Aluminal Industries, Inc. v. Newtown Commercial Assoc.,* 89 F.R.D. 326 (S.D.N.Y.1980); and *Opert v. Schmid,* 535 F.Supp. 591 (S.D.N.Y.1982).

In adopting an approach based on "fair play and substantial justice," the Supreme Court has, in its own words, "preclude[ed] clear-cut juris-

dictional rules. But any inquiry into 'fair play and substantial justice' necessarily requires determinations 'in which few answers will be written in black and white. The greys are dominant and even among them the shades are innumerable.'" *Burger King Corp. v. Rudzewicz,* — U.S. ——, 105 S.Ct. 2174, 2189 n. 29, 85 L.Ed.2d 528 (1985) (*quoting Kulko v. California Superior Court,* 436 U.S. 84, 92, 98 S.Ct. 1690, 1697, 56 L.Ed.2d 132 (1978)).

**9.** See, e.g., *McGee v. International Life Insurance Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957) (both); *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958) (service outside the state); *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 40 (1980) (probably both—defendants appeared specially); *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984) (probably both—defendants appeared specially); *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984) (service outside the state—defendants appeared specially); *Burger King Corp. v. Rudzewicz,* — U.S. ——, 105 S.Ct. 2174, 85 L.Ed.2d 528

*Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952), on the other hand, the Court was faced with the question whether the courts of Ohio could exercise jurisdiction in a cause of action unrelated to a corporation's activities in Ohio when that corporation had been served in Ohio through its president and when its contacts with Ohio were continuous and systematic. In holding that the Due Process Clause did not compel a decision either way on the question of jurisdiction over the corporation, the Court also left undisturbed Ohio's practice of permitting "a complainant to maintain a proceeding *in personam* in its courts against a properly served nonresident natural person to enforce a cause of action which does not arise out of anything done in Ohio." *Id.* at 441, 72 S.Ct. at 416.

If we look to *International Shoe*, as *Shaffer* instructs us to do, we find that

> due process requires only that in order to subject a defendant to a judgment in personam, *if he be not present within the territory of the forum*, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."

326 U.S. at 316, 66 S.Ct. at 158 (emphasis added) (citation omitted). Thus, *International Shoe* itself creates an exception to

minimum contacts analysis where the defendant is present within the forum state.

However, in light of *Insurance Corp. of Ireland v. Compagnie des Bauxites*, 456 U.S. 694, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982), we must still assess the propriety of an assertion of personal jurisdiction against the due process clause.[10] While jurisdiction flows from a state's sovereignty, the requirement that a court have personal jurisdiction rests ultimately on the due process clause.[11]

In *Insurance Corp. of Ireland*, the court upheld a finding of personal jurisdiction as a sanction under Fed.R.Civ.P. 37(b)(2) for defendants' refusal to comply with discovery orders relating to the jurisdictional question. In doing so, it did "not alter the requirement that there be 'minimum contacts' between the nonresident defendant and the forum state. Rather, [the holding dealt] with how the facts needed to show those 'minimum contacts' can be established...." *Id.* at 2104 n. 10.

However, the court upheld the continuing validity of consent—which by itself can overcome the absence of "minimum contacts"—as a basis of personal jurisdiction,[12] and proceeded with an analysis in which the lower court's alternative finding of minimum contacts played only a minor role:

> The personal jurisdiction requirement recognizes and protects an individual liberty interest. It represents a restriction

---

(1985) (service outside the state—defendants appeared specially). None of these cases involved service of process on a defendant or its agent while the defendant was present in the forum state.

**10.** Thus, while we generally agree with the following statement from *Driver v. Helms*, 577 F.2d 147, 156 n. 25 (1st Cir.1978)—"A state boundary is still a significant jurisdictional demarcation because if a defendant is found and served within the state, minimum contacts need not be established, and jurisdiction may be asserted on the basis of the state's sovereignty"—we are obligated to explain why this type of personal jurisdiction does not offend due process.

**11.** "The restriction on state sovereign power described in *World-Wide Volkswagen Corp.* ... must be seen as ultimately a function of the individual liberty interest preserved by the Due

Process Clause. That Clause is the only source of the personal jurisdiction requirement and the Clause itself makes no mention of federalism concerns. Furthermore, if the federalism concept operated as an independent restriction on the sovereign power of the court, it would not be possible to waive the personal jurisdiction requirement: Individual actions cannot change the powers of sovereignty, although the individual can subject himself to powers from which he may otherwise be protected." *Insurance Corp. of Ireland v. Compagnie des Bauxites*, 102 S.Ct. at 2104 n. 10; *see also Burger King*, 105 S.Ct. at 2182 n. 13.

**12.** *See, e.g., National Equipment Rental, Ltd. v. Szukhent*, 375 U.S. 311, 316, 84 S.Ct. 411, 414, 11 L.Ed.2d 354 (1964) ("parties to a contract may agree in advance to submit to the jurisdiction of a given court"); *see also Burger King*, 105 S.Ct. at 2182 n. 14.

on judicial power not as a matter of sovereignty, but as a matter of individual liberty. Thus, the test for personal jurisdiction requires that "the maintenance of the suit ... not offend 'traditional notions of fair play and substantial justice.'"

102 S.Ct. at 2104.

■ Recognizing this test as our guidepost, we conclude that there was nothing unfair or unjust in Amusement's play. Mordelt was properly served while present in New Orleans. When the defendant is present within the forum state, notice of the suit through proper service of process is all the process to which he is due. In this case, Mordelt's presence in New Orleans gave rise to a risk of his being haled into court, which, particularly in light of his knowledge that Amusement had intended to display Heimo's goods at the convention, was not so unpredictable as to be unfairly burdensome.[13] By entering Louisiana, he subjected himself to sovereign powers from which, had he remained outside the state, he was otherwise protected. *Insurance Corp. of Ireland,* 102 S.Ct. 2104 n. 10; *see* note 11 *supra.*[14]

■ Given that a traditional notion of fair play and substantial justice has been that presence alone is sufficient to support personal jurisdiction, the facts of Mordelt's presence and proper service are decisive. *Shaffer v. Heitner's* admonition that " 'traditional notions of fair play and substantial justice' can be as readily offended by the perpetuation of ancient forms that are no

longer justified as by the adoption of new procedures that are inconsistent with the basic values of our constitutional heritage," 97 S.Ct. at 2584, does not cause us to reach a contrary conclusion. Insofar as the due process clause "does not contemplate that a state may make binding a judgment ... against an individual or corporate defendant with which the state has no contacts, ties, or relations," *id.* at 2586 (*quoting International Shoe Co. v. Washington,* 326 U.S. at 319, 66 S.Ct. at 160), our holding is clearly not to the contrary.[15]

It could be argued that these facts are merely fortuitous, and that substantively, this case is no different from one in which Mordelt leaves Louisiana and subsequently receives service by mail. Analytically, however, there is a significant difference. While the due process clause necessarily restricts the state's sovereign power, no case has yet held that it eliminates that power altogether. That the requirement of personal jurisdiction rests in all cases on the due process clause does not weaken the proposition that the exercise of jurisdiction, as distinguished from its limitation, is a sovereign act. If there is anything that characterizes sovereignty, it is the state's dominion over its territory and those within it. Fairness does not operate in a vacuum. To abstract it from context and elevate it blindly over sovereign prerogatives is ultimately to free the individual from the obligations inherent in a statist system.

Wholly apart from the significance of the service of process, other factors strengthen

13. As Justice Stevens noted in *Shaffer,*
    If I visit another State ..., I knowingly assume some risk that the State will exercise its power over ... my person while there. My contact with the State, though minimal, gives rise to predictable risks.
    433 U.S. at 218, 97 S.Ct. at 2587 (concurring in the judgment).

14. To the extent that the due process clause "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attentuated' contacts," *Burger King,* 105 S.Ct. at 2183, nothing in our holding stands to the contrary. Mordelt were already present within the jurisdiction; he had, in effect, haled himself in.

15. We do not imply that proper service, without more, is in all cases sufficient. In *Burger King* the Supreme Court explicitly rejected "any talismanic jurisdictional formulas; 'the facts of each case must [always] be weighed in determining whether personal jurisdiction would comport with 'fair play and substantial justice.'" 105 S.Ct. at 2189 (citation omitted).

To the extent that it relies on the rubric of minimum contacts analysis, our holding, like that of *Insurance Corp. of Ireland,* "deals with how the facts needed to show those 'minimum contacts' can be established when a defendant" is served while present in the forum state. 102 S.Ct. at 2104 n. 10.

our view that personal jurisdiction here is just and fair.[16] First, defendant's presence within the forum state was purposefully related to his business existence. This is not a case in which Mordelt, in a purely personal capacity, visited New Orleans just to see relatives or to enjoy the cooking of Antoine's. Rather, the conclusion is undeniable that Mordelt was present in New Orleans on business for the purpose of representing Heimo and drumming up business for it at the convention of the IAAPA, of which Heimo was a member.

Second, we note that had this suit been brought in Florida, a strong case could be made that jurisdiction would have been proper under *McGee v. International Insurance Co., supra*, since the cause of action apparently arose out of business transacted with persons in Florida.[17] The fact that the risk of being haled into a Louisiana court was significantly less than the risk of defending this suit in a Florida court takes on far less importance when the international nature of the transaction is considered. If Mordelt is to be subjected to the jurisdiction of a United States court, it matters little in weighing the burdens and inconveniences to Mordelt that the court is in Louisiana rather than Florida.[18]

Finally, Mordelt is not without protection against the inconveniences and burdens of litigating several blocks from the French Quarter. These protections include *forum non conveniens*,[19] change of venue,[20] and choice of law rules.[21] Although it is unavailing here, Mordelt may also move to quash service on the grounds that his presence in the forum state was procured by fraud, *Wyman v. Newhouse*, 93 F.2d 313 (2d Cir.1937), *cert. denied*, 303 U.S. 664, 58 S.Ct. 831, 82 L.Ed. 1122 (1938), and he can, where permitted, protect himself in the future with forum selection clauses. *M/S Bremen and Unterweser Reederei v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972).[22]

## CONCLUSION

We hold today that the rule of transient jurisdiction has life left in it yet. As lawyers and judges, we have looked at the problem from the practical work-a-day world in which we live, play, travel, and do business. We have asked ourselves whether Mordelt was in a relationship to the forum state that makes it ethical, not onerous, and fair, not oppressive, to subject him to the judicial arm of that state. Having

16. The level of fairness here certainly rises to the level found in our recent "stream of commerce" cases. In *Bean Dredging Corp. v. Dredge Technology Corp.*, 744 F.2d 1081 (5th Cir.1984), jurisdiction in Louisiana was found over a Washington corporation whose only "contact" with Louisiana was a finding that the corporation had "purposefully availed" itself of the benefits of Louisiana by selling a steel casting in *California*, where it was used to construct a cylinder, which in turn found its way into a dredge constructed in Louisiana. *See also Oswalt v. Scripto, Inc.*, 616 F.2d 191 (5th Cir.1980) (jurisdiction upheld over foreign manufacturer of lighters, which were delivered to a single distributor in the United States for nation-wide distribution); *cf. Vault Corporation v. Quaid Software, Ltd.*, 775 F.2d 638 (5th Cir.1985).

17. *See also Burger King*, 105 S.Ct. at 2185 *ff.*

18. *Cf.* Note, *Alien Corporations and Aggregate Contacts: A Genuinely Federal Jurisdictional Standard*, 95 Harv.L.Rev. 470 (1981); *Poyner v. Erma Werke GMBH*, 618 F.2d 1186, 1192 (6th Cir.1980), *cert. denied*, 449 U.S. 841, 101 S.Ct. 121, 66 L.Ed.2d 49 (1980).

19. *See, e.g., Opert v. Schmid*, 535 F.Supp. 591 (S.D.N.Y.1982) (upholding jurisdiction based on temporary presence, but dismissing under the doctrine of *forum non conveniens*).

20. For example, 28 U.S.C. § 1404(a) gives the district court broad discretionary power "[f]or the convenience of parties and witnesses, in the interest of justice, [to] ... transfer any civil action to any other district ... where it might have been brought." *Driver v. Helms*, 577 F.2d 147, 157 (1st Cir.1978); *see also Burger King*, 105 S.Ct. at 2185.

21. *Burger King*, 105 S.Ct. at 2185.

22. Heimo's contract of sale did contain standard form language, in German, that stipulated that in the event of legal action between the parties, the District Court of Heilbronn/Neckar, West Germany, would be the exclusive venue. Mordelt did not raise this issue before the district court, the district court did not consider it, and Mordelt has not raised the issue before us. We therefore do not consider it either.

answered in the affirmative, we reverse and remand.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.