NUTRI–WEST, also known as Nutri–West Manufacturing Company, and Nutrition Center, Incorporated, Appellant (Plaintiff),

v.

Betty G. GIBSON, James E. Gibson, Robert D. Davies and Kathleen N. Davies, individually and doing business as Nutri–West of California, Appellees (Defendants).

No. 87–266.

Supreme Court of Wyoming.

Nov. 23, 1988.

J. Patrick Hand of Hand, Hand & Hand, Douglas, for appellant.

Stuart R. Day (argued), of Williams, Porter, Day & Neville, Casper, and Lawrence M. Kahn of Perona, Langer, LaTorraca & Beck, Long Beach, Cal., for appellees.

Before CARDINE, C.J., and THOMAS, URBIGKIT, and MACY, JJ., and BROWN, J., Retired.*

CARDINE, Chief Justice.

This case concerns the validity of the so-called "transient jurisdiction" doctrine, which provides that personal service upon a nonresident individual who is temporarily present in a state is a sufficient basis for the exercise of personal jurisdiction over the individual. We conclude that the transient rule is still valid, and we reverse the district court's order dismissing appellant's complaint for lack of personal jurisdiction. Addressing a related issue, we hold that the district court acquired personal jurisdiction over appellees' partnership by personal service upon a partner while present in the state, but not over unserved nonresident partners in their individual capacities.

## FACTS

In October or November of 1984, Paul White, manager of appellant Nutri–West, met appellee Betty Gibson at a chiropractor's meeting in Omaha, Nebraska. About a month later, Mr. White called Ms. Gibson in California and asked if she would be interested in an exclusive California distributorship for Nutri–West products. On two occasions, Mr. White flew to California and met with Ms. Gibson, and ultimately Ms. Gibson agreed to the distributorship. Mr. White mailed Ms. Gibson a written distributorship contract which was signed in California by Ms. Gibson, her husband James

Gibson, Robert Davies and his wife Kathleen Davies.

The Gibsons and the Davies formed a partnership called Nutri–West of California. As a distributor of appellant's products, Nutri–West of California solicited sales of Nutri–West products in California, ordered the products by telephone or mail from appellant's Douglas, Wyoming office, and sold them in California. As the business relationship progressed, appellant became unhappy with appellees' performance and, in June 1987, filed an action for declaratory judgment and injunction terminating the distributorship agreement. Ms. Gibson came to Douglas, Wyoming to attend a convention sponsored by appellant, where, on June 27, 1987, she was personally served with four copies of the complaint and four summonses naming herself and the other three individual appellees as defendants.

Appellees entered a special appearance to quash service and contest jurisdiction, contending that the service was defective and that the court's exercise of personal jurisdiction over them violated their due process rights under the federal and Wyoming constitutions. After affidavits and briefs were filed, the district court dismissed appellant's complaint because "the defendants [did] not have sufficient contacts with this state to allow a Wyoming court to exercise jurisdiction over them." Appellant Nutri–West appeals from the order of dismissal, contending that the district court erred in applying the minimum contacts test to determine personal jurisdiction over Ms. Gibson, the other individual partners, and the partnership.

## JURISDICTION OVER MS. GIBSON

In determining personal jurisdiction, we must first decide whether the service requirements of Rule 4, W.R.C.P., have been met. If Rule 4 is satisfied, we must then determine whether the court's exercise of jurisdiction is consistent with due process. See *First Wyoming Bank, N.A., Rawlins v. Trans Mountain Sales & Leas-*

* Retired June 30, 1988.

*ing, Inc.,* Wyo., 602 P.2d 1219 (1979). With respect to Ms. Gibson, there appears to be no deficiency in service of process. Accordingly, we will focus on whether due process considerations precluded the district court from exercising personal jurisdiction over her.

W.S. 5–1–107(a), provides that a "Wyoming court may exercise jurisdiction on any basis not inconsistent with the Wyoming or United States Constitution." This statute extends state court jurisdiction in Wyoming to the constitutionally permissible limit. *Shanks v. Westland Equipment and Parts Co.,* 668 F.2d 1165 (10th Cir.1982). The principal question in this appeal is whether it is constitutionally permissible to predicate personal jurisdiction on temporary physical presence and personal service within the forum state.

The continued vitality of jurisdiction based on physical presence, sometimes called "transient" jurisdiction, has been discussed by many commentators and several courts. While the commentators have been largely critical of the doctrine,[1] most courts have concluded that it is still valid.[2] In urging that transient jurisdiction is no longer constitutionally permissible, appellees rely heavily on the following statement contained in *Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 2584, 53 L.Ed.2d 683 (1977):

> "[A]ll assertions of state-court jurisdiction must be evaluated according to the standards set forth in *International Shoe* [326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057 (1945) ] and its progeny."

Contrary to appellees' assertions, this statement does not require minimum contacts analysis. Instead, it merely requires that the standards set forth in *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057 (1945), and its progeny must be met. In International Shoe, the Court recognized an exception from minimum contacts analysis when the defendant is present in the forum state:

> "[D]ue process requires only that in order to subject a defendant to a judgment in personam, *if he be not present within the territory of the forum,* he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " (emphasis added and citation omitted) 66 S.Ct. at 158.

See also *Amusement Equipment, Inc. v. Mordelt,* 779 F.2d 264, 269 (5th Cir.1985). Appellee has cited, and we have found, no subsequent United States Supreme Court cases requiring minimum contacts where service is made upon an individual within the forum state. If an individual is served while present in the forum state, minimum contacts analysis is not appropriate for determining jurisdiction over that individual. *Amusement Equipment,* supra.

■ Although minimum contacts analysis is inappropriate, exercise of personal jurisdiction still must satisfy due process, which requires that maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Amusement Equipment,* supra 779 F.2d at 269 (discussing *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982)). We are convinced that transient jurisdiction does not offend this standard. "[A] traditional notion of fair play and sub-

---

1. See, e.g., Ehrenzweig, The Transient Rule of Personal Jurisdiction: The "Power" Myth and Forum Conveniens, 65 Yale L.J. 289 (1956); Bernstine, Shaffer v. Heitner: A Death Warrant for the Transient Rule of In Personam Jurisdiction?, 25 Vil.L.Rev. 38 (1979). Cf. Glen, An Analysis of "Mere Presence" and Other Traditional Bases of Jurisdiction, 45 Brooklyn L.Rev. 607 (1979).

2. See *Driver v. Helms,* 577 F.2d 147 (1st Cir. 1978); *Donald Manter Co., Inc. v. Davis,* 543 F.2d 419 (1st Cir.1976); *Aluminal Industries,*

*Inc. v. Newtown Commercial Associates,* 89 F.R.D. 326 (S.D.N.Y.1980); *O'Brien v. Eubanks,* Colo.App., 701 P.2d 614 (1984); *Oxmans' Erwin Meat Co. v. Blacketer,* 86 Wis.2d 683, 273 N.W. 2d 285 (1979); *Lockert v. Breedlove,* 321 N.C. 66, 361 S.E.2d 581 (1987); *Opert v. Schmid,* 535 F.Supp. 591 (S.D.N.Y.1982); *In re Marriage of Pridemore,* 146 Ill.App.3d 990, 100 Ill.Dec. 640, 497 N.E.2d 818 (1986); *Humphrey v. Langford,* 246 Ga. 732, 273 S.E.2d 22 (1980); *Amusement Equipment, Inc. v. Mordelt,* 779 F.2d 264 (5th Cir.1985).

stantial justice has been that presence alone is sufficient to support personal jurisdiction * * *." *Amusement Equipment,* supra 779 F.2d at 270. Jurisdiction based upon personal service within the forum state is a concept that is historically entrenched, nearly universally recognized, very predictable, and easy to apply. One cannot claim unfair surprise when he enters a state and is subjected to the jurisdiction of that state's courts.

In his concurring opinion in *Shaffer v. Heitner, supra,* Justice Stevens stated:

"If I visit another State * * *, I knowingly assume some risk that the State will exercise its power over * * * my person while there. My contact with the State, though minimal, gives rise to predictable risks." 97 S.Ct. at 2587, Stevens, J., concurring.

The risks alluded to by Justice Stevens are accompanied by corresponding benefits. One's presence in a state entitles him to the use of the state's public resources and the protection of the state's laws. And, one's presence in a state is rarely accidental or unrelated to some personal purpose. In this case, Ms. Gibson freely and voluntarily traveled to Douglas, Wyoming to attend a business meeting. It is not claimed in this appeal that service upon Ms. Gibson was achieved through subterfuge or trickery.

Finally, the exercise of jurisdiction by a state court is an act of sovereign power. Considerations of individual liberty may limit that power, *Insurance Corp. of Ireland,* supra 102 S.Ct. at 2104, but they do not completely eradicate it.

"While the due process clause necessarily restricts the state's sovereign power, no case has yet held that it eliminates that power altogether. That the requirement of personal jurisdiction rests in all cases on the due process clause does not weaken the proposition that the exercise of jurisdiction, as distinguished from its limitation, is a sovereign act. If there is anything that characterizes sovereignty, it is the state's dominion over its territory and those within it. Fairness does not operate in a vacuum. To abstract it from context and elevate it blindly over

sovereign prerogatives is ultimately to free the individual from the obligations inherent in a statist system." *Amusement Equipment,* supra 779 F.2d at 270.

We detect no unfairness or injustice in the exercise of personal jurisdiction based upon an individual's presence within a state, and "we are unwilling to reject this established jurisdictional principle without direction from a higher authority." *Opert v. Schmidt,* 535 F.Supp. 591, 594 (S.D.N.Y. 1982). The district court erred in concluding that the presence of Ms. Gibson in Wyoming and personal service upon her did not confer personal jurisdiction over her.

### JURISDICTION OVER THE PARTNERSHIP AND CO–PARTNERS

■ Turning to the question of jurisdiction over Ms. Gibson's co-partners and the partnership, we begin our analysis with Rule 4(d)(3), W.R.C.P., which provides that service of process shall be made

"[u]pon a partnership, or other unincorporated association, by delivery of copies to one or more of the partners or associates, or a managing or general agent thereof, or by leaving same at the usual place of business of such defendant with any employee then in charge thereof."

For purposes of service, the rule treats a partnership as an entity which may be summoned to appear by service upon a single partner. In the caption of appellant's complaint, the four individual appellees are named as defendants "individually and doing business as NUTRI–WEST OF CALIFORNIA." Although Nutri–West of California is not specifically identified as a partnership, it is identified as an entity. Ms. Gibson, its managing partner, was personally served with a copy of the complaint. In our view, these undisputed facts demonstrate adequate service in accordance with Rule 4(d)(3).

■ In contrast, effective service upon Ms. Gibson's co-partners as individuals was not achieved. The summonses for the individual co-partners were served upon Ms. Gibson as their "agent and partner." Nothing in the record suggests that the

co-partners appointed Ms. Gibson as their agent for service of process, and nothing in Rule 4 validates this manner of service upon an individual. Accordingly, the district court did not acquire jurisdiction over the partners of Nutri–West of California in their individual capacities.

 Although service upon the partnership was achieved in accordance with Rule 4, we must still determine whether due process considerations precluded the court from obtaining personal jurisdiction over it. The general rule appears to be that personal service upon one partner who is present in the forum state confers jurisdiction over the partnership, particularly when, as in this case, the partner's presence in the jurisdiction is related to partnership activity. See *Long v. Baldt*, 464 F.Supp. 269, 275, n. 8 (D.S.C.1979); R. Casad, Civil Jurisdiction ¶ 3.03, n. 366 (1986 Supp.); 2 Cavitch, Business Organizations, § 25.02[1] (1984); E. Scoles and P. Hay, Conflict of Laws, § 9.1 (1984). We conclude that the district court acquired personal jurisdiction over Nutri–West of California by personal service upon Ms. Gibson in Wyoming.

## CONCLUSION

Personal service upon Ms. Gibson in Wyoming conferred jurisdiction over the partnership and Ms. Gibson individually, but not over her co-partners in their individual capacities. If appellant is successful in obtaining a declaratory judgment or injunction, Ms. Gibson and the partnership would be bound by it. Her three co-partners cannot be bound in their individual capacities, however, because effective service upon them as individuals was not achieved. *Olsen v. Puntervold*, 338 F.2d 21 (5th Cir. 1964). See also 4A C. Wright & A. Miller, Federal Practice and Procedure: Civil 2d § 1105, p. 136 (1987).

Reversed and remanded for proceedings in accordance with this opinion.