(766 P.2d 1291)

No. 62,238

SARA ANN (DEAN) SWARTS, *Appellant*, v. JOHN WILLARD DEAN, JR., *Appellee.*

Opinion filed January 13, 1989.

*William T. Smith,* of Mission, for the appellant.

*Kirk D. Auston,* of Overland Park, for the appellee.

Before DAVIS, P.J., JACK L. BURR, District Judge, assigned, and DANIEL L. HEBERT, District Judge, assigned.

HEBERT, J.: Sara Ann Swarts and appellee, John Willard Dean, Jr., were married in Kansas in 1968. In 1971, a boy was born to them in Kansas. Following a move to Texas, they had a second child, a girl, born in 1973. They obtained a divorce in Texas in 1976 and Dean was ordered to pay $200 per month child support. Dean subsequently became a resident of Louisiana and Swarts returned to Kansas with the children. Dean maintained contact with the children and exercised visitation rights.

On January 6, 1988, Swarts filed in the District Court of Johnson County, Kansas, a motion to modify the child support order. Dean was personally served with summons on January 7,

1988, while visiting his children in Kansas. The motion to modify was thereafter dismissed by the district court, citing lack of personal jurisdiction over Dean. Swarts timely appeals.

The trial court based its dismissal upon the decision of the United States Supreme Court in *Kulko v. California Superior Court*, 436 U.S. 84, 56 L. Ed. 2d 132, 98 S. Ct. 1690 (1978). We find this reliance to be misplaced since there is a significant factual distinction between *Kulko* and the instant case.

In *Kulko*, the couple was married in California, subsequently lived in New York, and obtained a divorce in Haiti. The mother returned to California, where the children resided with her during vacations. The children resided with the father in New York during the school year. The mother subsequently filed *in California* a motion to modify custody; the father was served with process *in New York.*

In the instant case, the children resided with their mother in Kansas, the motion was filed in Kansas, and the father was personally served with a Kansas court summons while physically present in Kansas. Such personal service is proper under K.S.A. 1987 Supp. 60-304(a)(1).

The *Kulko* decision was premised upon the "minimum contacts" analysis formulated by the United States Supreme Court in *International Shoe Company v. State of Washington*, 326 U.S. 310, 316, 90 L. Ed. 95, 66 S. Ct. 154 (1945):

"[D]ue process requires only that in order to subject a defendant to a judgment in personam, *if he be not present within the territory of the forum*, he have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." (Emphasis added.)

The Court in *Kulko* considered the minimum contacts analysis as applied in *Shaffer v. Heitner*, 433 U.S. 186, 198-200, 53 L. Ed. 2d 683, 97 S. Ct. 2569 (1977), and concluded that it was improper to find personal jurisdiction in a state "merely because the mother was residing there." 436 U.S. at 93.

While *Kulko* and *Shaffer* make clear that a motion to modify child custody or support does not provide a state with *long-arm* jurisdiction over a respondent absent significant contact with the forum state, neither of these cases addresses the question of personal service *within* the forum state.

A number of decisions subsequent to *Shaffer* and *Kulko* have considered the general proposition that personal service within

the forum state remains sufficient to confer jurisdiction. *Opert v. Schmid*, 535 F. Supp. 591, 593 (S.D.N.Y. 1982), stated:

"[I]t is black letter law that personal service within its geographical area establishes a court's personal jurisdiction over a defendant. [Citations omitted.]"

In *Amusement Equipment, Inc. v. Mordelt*, 779 F.2d 264, 270 (5th Cir. 1985), the court offered the following analysis:

"While the due process clause necessarily restricts the state's sovereign power, no case has yet held that it eliminates that power altogether. That the requirement of personal jurisdiction rests in all cases on the due process clause does not weaken the proposition that the exercise of jurisdiction, as distinguished from its limitation, is a sovereign act. *If there is anything that characterizes sovereignty, it is the state's dominion over its territory and those within it."* (Emphasis added.)

Several state courts have reached the same conclusion. In *In re Marriage of Pridemore*, 146 Ill. App. 3d 990, 497 N.E.2d 818 (1986), the petitioner filed a petition in Illinois to modify a Tennessee divorce decree to increase child support payments. The nonresident respondent was personally served while in Illinois attending his parents' wedding anniversary. The court held:

"[T]he Supreme Court has not imposed a minimum contacts requirement on a State's assertion of jurisdiction over a natural person who is personally served within its boundaries. . . . [M]ere presence of the person in this State is a sufficient basis upon which to establish personal jurisdiction over him." 146 Ill. App. 3d at 992.

The North Carolina Supreme Court considered the issue in *Lockert v. Breedlove*, 321 N.C. 66, 361 S.E.2d 581 (1987), and concluded:

"[T]he minimum contacts test is inapplicable to cases in which the defendant is personally served within the forum state. [Citations omitted.] . . . Neither *International Shoe* nor its progeny have questioned the constitutionality of a state's exercise of personal jurisdiction based solely on personal service within its borders." 321 N.C. at 69, 71.

North Carolina subsequently applied personal service jurisdiction in *Jenkins v. Jenkins*, 89 N.C. App. 705, 367 S.E.2d 4 (1988), to facts similar to the present case. Following a Tennessee divorce, the husband moved to Georgia and the wife moved to North Carolina where she filed a motion to modify child support. The husband was served with process while temporarily in North Carolina in connection with his employment. The court held that personal service conferred personal jurisdiction

and the minimum contacts test of due process was inapplicable. 89 N.C. App. at 706. See *Stevens v. Stevens,* 44 Colo. App. 252, 611 P.2d 590 (1980).

We conclude that personal service upon Dean while he was physically present within the State of Kansas was sufficient to confer personal jurisdiction over him and that the trial court erred in dismissing the motion to modify.

Dean next contends that, even if the trial court had personal jurisdiction, it should dismiss the action because Kansas is an inconvenient forum. The trial court did not address this issue in its written order of dismissal. The applicability of the theory of inconvenient forum is a factual consideration which must be determined by the trial court and may not be considered in the first instance by an appellate court.

Dean finally argues that the trial court lacks subject matter jurisdiction over a common-law motion to modify support. The trial court did not address this issue in its written order of dismissal; statements on the record, however, suggest an opinion that proceeding through the Uniform Reciprocal Enforcement of Support Act was at least a prerequisite, if not the exclusive means of seeking modification.

In *Dipman v. Dipman,* 6 Kan. App. 2d 844, 845, 635 P.2d 1279 (1981), this court clearly stated:

"Jurisdiction to determine a parent's duty to support a minor child has been held to proceed in Kansas from three sources: (1) K.S.A. 1980 Supp. 60-1610(a) (pertaining to Kansas divorces); (2) K.S.A. 23-451 *et seq.* (Uniform Reciprocal Enforcement of Support Act); and (3) common law concepts of *parens patriae. Keller v. Guernsey,* 227 Kan. 480, 608 P.2d 896 (1980)."

K.S.A. 38-1121 and 38-1123 also set forth provisions governing the establishment and collection of child support obligations under certain circumstances. However, there is no statute which establishes any priority or prerequisite to the filing of an action in Kansas to increase child support based upon the absent parent's common-law duty.

Reversed and remanded.